(Nos. 38470, 38582, Cons.—

TIME INCORPORATED, Appellant, *vs.* HARRY L. HULMAN, Director of Revenue, *et al.,* Appellees.—(ADVERTISING PUBLICATIONS, INC., *et al.,* Appellants, *vs.* Same Appellees.)

*Opinion filed September 29, 1964.*

No. 37470—SPRAY, PRICE, TOWNSEND & CUSHMAN, of Chicago, (CRANSTON SPRAY, ROBERT S. CUSHMAN, P. MICHAEL PHELPS, and JOHN A. JEFFRIES, of counsel,) for appellant.

No. 38582—GOLDBERG, WEIGLE, MALLIN & RIVKIN, of Chicago, (IRVING H. GOLDBERG, J. NORMAN GODDESS, MAURICE S. WEIGLE, HARRY M. BROSTOFF, and JOHN C. HUDSON, of counsel,) for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, (RAYMOND S. SARNOW, RICHARD A. MICHAEL, CALVIN CAMPBELL, and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

These cases are two separate direct appeals from judgments of the circuit court of Cook County, consolidated on the motion of this court. The issues involved in each case concern the public revenue and constitutional questions.

The action brought by Time, Incorporated, publisher of magazines known as *Time, Life, Sports Illustrated, Fortune, Architectural Forum,* and *House and Home* sought to enjoin defendants, the Director of Revenue and the Attorney General, from imposing upon and collecting from plaintiff any State and municipal retailers occupation taxes meas-

ured by the gross receipts from the sales in Illinois of its magazines and from imposing and collecting any use tax and service use tax measured by the purchase price of the paper used in printing the magazines. Motions for summary judgment and for judgment on the pleadings were filed by plaintiff and defendants. The trial court sustained defendants' motion, denied plaintiff's motion, and entered a decree dismissing the cause for want of equity.

The action brought by the 27 plaintiffs in No. 38582, the Advertising Publications case, sought a declaratory judgment that as publishers of their respective periodicals they were not engaged in a business subject to the retailers' occupation tax and that the material transferred in these periodicals was not tangible personal property under that tax act. The trial court overruled a motion to dismiss the complaint, but on hearing found for defendants and entered judgment for defendants.

The present Retailers' Occupation Tax Act became effective July 1, 1933. Its title recited that the act levies "a tax upon persons engaged in the business of selling tangible personal property." The Department of Revenue adopted Rules 2 and 63 which stated that receipts from sales of newspapers, magazines and periodicals, and receipts from subscriptions from Illinois subscribers were subject to this tax. In the case of Calumet Publishing Co. v. McKibben, 41 C 3507, the circuit court of Cook County on March 17, 1944, found the collection of retailers' occupation tax measured by the receipts from the sale of newspapers and magazines was illegal and enjoined collection of the tax, but refused to enjoin the collection of the tax based upon receipts from books and sheet music. Upon appeal from the latter portion of the decree, (No. 28197 in this Court) the Attorney General confessed error, the cause was remanded and the decree extended to enjoin collection of the tax on sales of books and sheet music. Subsequent to the entry of these decrees, the Department of Revenue issued on August

11, 1947, a revised Rule 2 which stated that vendors of newspapers, magazines, periodicals, books, sheet music or phonographic recordations are not engaged in the business of selling tangible personal property at retail. Pursuant to this rule, the Department of Revenue, thereafter until August 1, 1961, did not seek to collect retailers' occupation tax upon receipts from the sale of magazines.

So matters stood until after the General Assembly amended section 1 of the Retailers' Occupation Tax by adopting Senate Bill No. 568 in 1961. This is the statute upon which the case turns, and we therefore set it forth in full.

"AN ACT to amend Section 1 of the 'Retailers' Occupation Tax Act', approved June 28, 1933, as amended, for the purpose of indicating the General Assembly's intention to exclude the purchase, employment and transfer of newsprint and ink, whose primary purpose is the conveying of news, from the scope of the phrase 'tangible personal property' as used in said Act.

"Whereas, the General Assembly desires to prevent discrimination against newspapers and in favor of competing news-conveying agencies that do not transfer tangible personal property; and

"Whereas, although the conveying of information which has a more permanent value in a tangible form causes the transfer of paper and other tangible personal property to assume a substantial and significant part of the transaction as a means of preserving as well as conveying such information (thus causing sales of books, phonograph records and other articles of commerce, which are in tangible form, and which contain information whose value is of a more permanent character than the information conveyed by newspapers, to be sales of tangible personal property); and

"Whereas, this is not the case with respect to information conveyed by newspapers because that information can

lose its value even before being read, if not read immediately; and

"Whereas, the value and purchase price of newspapers attaches to the news and other information contained therein, rather than to the tangible characteristics of such newspaper, and such information has only a fleeting value and, because of its transitory character, would be just as valuable if conveyed by media (such as radio and television) that convey the news without transferring any tangible personal propety.

"Now, Therefore, *Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

"Section 1. Section 1 of the 'Retailers' Occupation Tax Act', approved June 28, 1933 as amended, is amended to read as follows:

"§ 1. [Terms defined.]

\* \* \*

"*The purchase, employment and transfer of such tangible personal property as newsprint and ink for the primary purpose of conveying news (with or without other information) shall not be deemed to be a purchase, use or sale of tangible personal property.*" (Emphasis supplied.) Ill. Rev. Stat. 1963, chap. 120, par. 440.

Thereafter, the Department of Revenue issued its revised Rule No. 2 which provided: "Rule 2. Sellers of Newspapers, Magazines, Books, Sheet Music and Phonograph Records and their Suppliers.—Effective August 1, 1961, sellers of magazines, books, sheet music and phonograph records incur retailers' occupation tax liability when they sell any of these items to purchasers for use or consumption and not for resale. Sales of newspapers are not subject to the tax."

The plaintiffs first contend that they are not engaged in the sale of tangible personal property, and hence are not subject to the tax. In advancing this contention they emphasize the aspect of their businesses that involves the

collection, editing and publication of news, short stories, features and other information, and minimize the fact that the finished product is sold as tangible personal property. They submit that their position is supported by the so-called Graphic Arts cases (*Burgess Co. v. Ames,* 359 Ill. 427, holding that blueprinters, photostaters and commercial photographers are not retailers of tangible personal property; *Wallender-Dedman Co. v. Dept. of Revenue,* 15 Ill.2d 485; and *Adair Printing Co. v. Ames,* 364 Ill. 342, holding that commercial job printers are not retailers of tangible personal property; and *A.B.C. Electrotype Co. v. Ames,* 364, Ill. 360, holding that electrotypers, stereotypers and matrix makers are not retailers of tangible personal property). The defendants answer that a magazine is obviously tangible personal property and that plaintiffs are retailers in selling their magazines to their subscribers.

The Graphic Arts cases involved service occupations, and we have often held that the transfer of tangible personal property does not result in retailers' occupation tax liability where such transfer is merely incidental to the rendering of a service, which is the substance of the transaction. (See, e.g., *Ingersoll Milling Machine Co. v. Dept. of Revenue,* 405 Ill. 367, 370.) But we have also held that "[I]f the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail, and the tax which he pays for the privilege of engaging in such business is measured by the price which the purchaser pays for the article and the service incident thereto." *Snite v. Department of Revenue,* 398 Ill. 41, 46.

We are of the opinion that the plaintiffs do not furnish a service to which the transfer of tangible personal property is merely incidental. The individual subscriber of

plaintiffs' magazine receives no service other than that customarily rendered in the retail sale of any item. The subscriber is not asked what news, short stories, features or other information he desires. He accepts plaintiffs' product as furnished or not at all. The characteristics that resulted in nontaxability in the Graphic Arts cases are not present here.

Liability for retailers' occupation tax must be determined by the nature and character of the transaction transferring magazines to their subscribers for use or consumption. Regardless of what other occupations plaintiffs may engage in, if in transferring magazines to their subscribers they are engaged in the business of selling tangible personal property at retail they are liable for retailers' occupation tax. Obviously the rule must be the same for plaintiffs and the corner druggist who sells one of plaintiffs' magazines to a customer.

The sale of a magazine is essentially not different from the sale of a loaf of bread, or an automobile. While it is true that the utility or value of plaintiffs' magazines is in their content and not the paper and ink with which they are printed, the taxability of the transaction is not determined by weighing the value of the intangible properties of the item of sale, such as form, organization and design, against the value of its tangible properties, such as weight, size and texture. The test is, where tangible personal property is transferred, as the parties agree occurs in the transactions here involved, whether the transfer is the substance of the transaction or merely incidental to a service. In selling magazines by subscriptions, plaintiffs act as retailers of tangible personal property and as such are liable for retailers' occupation tax, if not otherwise exempt.

Nor are we persuaded by the argument advanced by some of the plaintiffs that they are not engaged in the business of selling at retail because the receipts from the sale of their magazines cover only 43% of the cost of

printing and distributing them. The fact that the major part of their income is derived from the sales of advertising, and that circulation, and hence advertising revenue, would be reduced if they sought to charge subscribers the actual cost of the magazines, does not alter the fact that the magazines are sold. Liability for the tax does not depend upon the existence of a profit from the sale. *Valier Coal Co.* v. *Department of Revenue*, 11 Ill.2d 402.

The remaining question is whether the plaintiffs' sales are excluded under the 1961 amendment. The plaintiffs assert that they are, and the defendants that they are not. The trial court adopted the defendants' construction. While neither party has attacked the basic validity of the exclusion, the plaintiffs contend that the construction adopted by the trial court makes it discriminatory and unconstitutional.

The preamble expresses the legislative purpose to prevent discrimination against newspapers in favor of radio and television, which furnish news and other information, but do not transfer tangible personal property. It distinguishes between newspapers and "books, phonograph records and other articles of commerce, which are in tangible form, and which contain information whose value is of a more permanent character than the information conveyed by newspapers * * *." The text of the amendment refers to "* * * transfer of such tangible personal property as newsprint and ink for the primary purpose of conveying news (with or without other information) * * *."

The Department relies heavily upon the language of the preamble to justify its Rule, which states that sellers of magazines incur the tax while sellers of newspapers do not. But as the plaintiffs point out, although the preamble specifically mentions books and phonograph records, magazines are not mentioned, and the actual amendment refers not only to "newsprint," but to other materials "such as"

newsprint. The Department's constructon ignores the words "such as".

The plaintiffs also point out that newspapers compete with magazines both for subscribers and for advertising, and that the Department's construction of a statute intended to eliminate discrimination of one kind actually creates discrimination of another kind. Of the 728 newspapers being published in Illinois, 77 are published daily, 628 weekly, 41 semi-weekly, 1 three times a week and 1 four times a week. Some are printed on ordinary newsprint, and some are not. Were we to construe Rule 2 of the Department to be authorized by the 1961 amendment so as to exempt only newspapers printed on newsprint, then the amendment would be unconstitutional as violating the uniformity clause of the constitution of Illinois and the equal-protection clause of the fourteenth amendment to the United States constitution. The power of the legislature to establish classifications which will extend a privilege to one group while denying it to another is well established. It is only that classification which "unreasonably discriminates" against one group or another that violates the constitutional guaranties.

In *Grasse* v. *Dealer's Transport Co.* 412 Ill. 179, this court held that classification must be based on real and substantial differences. In *City of Chicago* v. *Ames,* 365 Ill. 529, 534, we said: "The General Assembly may properly select a certain class and impose a tax on it to the exclusion of all others, provided there is in such discrimination a reasonable basis of difference, when considered in relation to the purposes of the act, * * *." After a full and careful consideration of the classes of newspapers and magazines disseminating news and information, we are of the opinion that there is no real or substantial difference between newspapers and plaintiffs' magazines. The same consideration which induced the legislature to recognize that publishers of newspapers were not within the taxable oc-

cupation carries over to publishers of news magazines or other news periodicals. As between two possible constructions of a statute, one rendering it constitutional and the other unconstitutional, this court will favor that construction rendering it constitutional. We hold that the amendment did not authorize any rule discriminating between newspapers and news magazines. We further are of the opinion that the rule of the Department did not subject plaintiffs' news magazines to the retailers' occupation tax. This rule is erroneous and invalid since it does not conform to the act and creates arbitrary and discriminatory classifications.

Likewise, section 2 of the Use Tax Act (Ill. Rev. Stat. 1963, chap. 120, par. 439.2) and section 2 of the Service Use Tax Act (Ill. Rev. Stat. 1963, chap. 120, par. 439.32) both contain language identical to the language in the body of Senate Bill 568. This language excludes the paper on which plaintiffs' magazines are printed and which is used for the primary purpose of conveying news. The same rules of statutory construction apply to these acts as apply to the Retailers' Occupation Tax Act and the same considerations apply. It is evident, therefore, that plaintiffs' are not subject either to the use tax or service use tax.

The trial court erred in each of these cases. The judgment in the case of Time, Incorporated, No. 38470, is reversed and the cause is remanded with directions to grant the injunctive relief sought. The judgment in Advertising Publications, Inc., No. 38582, is reversed and the cause is remanded with directions to declare the rights of plaintiffs therein as prayed in their complaint.

*Reversed and remanded with directions.*