Orville PITTS and Lawrence D'Attillio, individually and on behalf of all others similarly situated, Plaintiffs,

v.

DEPARTMENT OF REVENUE FOR the STATE OF WISCONSIN et al., Defendants.

No. 69–C–260.

United States District Court, E. D. Wisconsin.

Oct. 19, 1971.

Robert E. Sutton, Terrance Pitts, Milwaukee, Wis., for plaintiffs.

Robert Warren, Atty. Gen. for State of Wisconsin, Mary V. Bowman, Asst. Atty. Gen., for defendants.

Before CUMMINGS, Circuit Judge, REYNOLDS, Chief District Judge, and TEHAN, Senior District Judge.

## OPINION

TEHAN, Senior District Judge.

In this action the plaintiffs challenge the constitutionality of § 70.11(4) and § 71.01(3) (a), Wis.Stats.,[1] under the

---

1. "70.11 Property exempted from taxation The property described in this section is exempted from general property taxes:

\* \* \* \* \*

(4) Educational, religious, and benevolent institutions; women's clubs; historical societies; fraternities; libraries. Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational or benevolent associations, including benevolent nursing homes and retirement homes for the aged, and also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; or by women's clubs; or by domestic, incorporated historical societies; or by domestic, incorporated, free public library associations; or by fraternal societies operating under the lodge system (except university, college and high school fraternities and sororities), but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. Property owned by churches or religious associations necessary for location and convenience of buildings, used for educational purposes and not for profit, shall not be subject to the 10-acre limitation but shall be subject to a 30-acre limitation. Leasing such property to similar organizations for educational or benevolent purposes, where all the income derived therefrom is used for maintenance, shall not render the property taxable."

"71.01 Imposition of tax; exempt income

\* \* \* \* \*

(3) Exempt income. There shall be exempt from taxation under this chapter income as follows, to wit:

(a) Income of insurance companies, railroad corporations and sleeping car companies, of car line companies from operation of car line equipment as defined in s. 76.39, and corporations organized under ch. 185 which are bona fide co-operatives operated without pecuniary profit to any shareholder or member, or operated on a co-operative plan pursuant to which they determine and distribute their proceeds in substantial compliance with s. 185.45, and of all religious, scientific, educational, benevolent or other corporations or associations of individuals not organized or conducted for pecuniary profit. This paragraph does not apply to

Fourteenth Amendment to the United States Constitution. More precisely, they contend that the State of Wisconsin's grant of tax exemptions to organizations which discriminate in their membership on the basis of race, some of which organizations are admitted by the defendants to be included within the exemptions, constitutes state action fostering discrimination in violation of the equal protection clause of the Fourteenth Amendment. They seek a judgment declaring that § 70.11(4) and § 71.01(3) (a) are unconstitutional insofar as they permit tax exemptions for organizations which discriminate in membership on the basis of race and an injunction against their enforcement as to those organizations.

The defendants herein are the Department of Revenue for the State of Wisconsin and its secretary. No organization receiving an exemption under circumstances attacked by the plaintiffs was joined as a defendant, none chose to join, and none was brought in by the defendants. In this respect it must be remarked that the plaintiffs do not here challenge the right of any private organization to discriminate, nor do they claim that state action fostering discrimination exists in this case because activities of ostensibly private organizations have become impregnated with a governmental character.[2]

The primary issue presented, relevant to the question of the existence of subject matter jurisdiction over the plaintiffs' cause of action under § 1343, Title 28 U.S.C. and § 1983, Title 42 U.S.C. as well as determinative of the merits, is whether, in alleging and establishing that tax exemptions are granted under § 70.11(4) and § 71.01(3) (a) to organizations which discriminate, obviously state action, the plaintiffs have alleged and shown state action fostering discrimination violating the equal protection clause or whether the grant of special tax exemptions without inquiry into the policies of the organizations benefitted is merely an expression of neutrality with respect to those policies.

The parties are in agreement on the general principles to be applied by the court in resolving that issue. Thus, it is uncontroverted that:

(1) The Fourteenth Amendment prohibits the State from fostering or encouraging racial discrimination.[3]

(2) The Fourteenth Amendment does not prohibit purely private discrimination nor require the State to assume other than a neutral position with respect thereto.[4]

(3) The State can become involved in private discrimination to such an extent that that conduct is proscribed by the Fourteenth Amendment, and the court must sift the facts and weigh the circumstances to determine whether that significant involvement exists.[5]

the income of mutual savings banks, mutual loan corporations, savings and loan associations or credit unions except credit unions the membership of which is limited to groups having a common bond of occupation, or association, or to groups within a well-defined neighborhood, community or rural district. The amendment (1961) to this paragraph shall be applicable to taxation of income of the calendar year 1962, or corresponding fiscal years and thereafter."

2. Compare with Smith v. Young Men's Christian Ass'n. of Montgomery, 316 F. Supp. 899 (M.D.Ala., N.D.1970).

3. As stated in Adickes v. S. H. Kress & Co., 398 U.S. 144, at pp. 150–152, 90

S.Ct. 1598, at p. 1605. "Few principles of law are more firmly stitched into our constitutional fabric than the proposition that a State must not discriminate against a person because of his race * * * or in any way act to compel or encourage racial segregation."

4. Otey v. Common Council of City of Milwaukee, 281 F.Supp. 264, at p. 268 (E.D. Wis., 1968). It has been said, however, that any private right to discriminate is not constitutionally protected. Bright v. Isenbarger, 314 F.Supp. 1382, at p. 1390, (N.D.Ind., 1970) affirmed 7 Cir., 445 F.2d 412.

5. Burton v. Wilmington Pkg. Auth., 365 U.S. 715, at p. 722, 81 S.Ct. 856, 6 L.Ed.

On the fact side, the parties agree that § 70.11(4) and § 71.01(3)(a) were not enacted with any purpose of fostering, encouraging, effecting or perpetuating racial discrimination.[6]

Since the parties agree on general principles, we see no need to discuss at length the many precedents cited by counsel, none of which is *precisely* in point, discussing the complicated state action doctrine. It is sufficient to state that, as is so often true in this area, agreement on general principles does not begin to resolve the issue.

Three recent opinions dealing with the question of whether tax exemptions constitute significant state or governmental action or involvement have been cited to us by the parties, Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L. Ed.2d 697 (1970), Chicago Joint Bd. Amal. Cloth, Wkrs. v. Chicago Tribune Co., 435 F.2d 470 (7th Cir. 1970), cert. den. 402 U.S. 973, 91 S.Ct. 1662, 29 L. Ed.2d 138, and Green v. Connally, D.C., 330 F.Supp. 1150, decided by a three-judge court in the District of Columbia on June 30, 1971, Civil Action No. 1355–69. One other District Court case, affirmed by the Court of Appeals for this Circuit, Bright v. Isenbarger, 314 F.Supp. 1382 (N.D.Ind., 1970) affirmed 445 F.2d 412, appears relevant on the question. We believe that we can distinguish. *Walz, Chicago Joint Board* and *Bright*.

In *Walz*, the Supreme Court held that New York's grant of property tax exemptions to religious organizations for religious properties did not violate the Fourteenth Amendment.[7] It did not discuss the state action doctrine as such, but did discuss state involvement and the "policy of neutrality" required by

the First-Fourteenth Amendments and weighed factors similar to those relevant to determination of state action issues. In the context there considered, it held that the grant of a tax exemption "creates only a minimal and remote involvement" (p. 676, 90 S.Ct. p. 1415) between the State and the grantee and constituted "benevolent neutrality." (p. 676, 90 S.Ct. 1409) Translated into traditional state action terms, the court held that the grant of a tax exemption constituted affirmative (p. 678, 90 S.Ct. 1409) but not significant state action and therefore was not prohibited by the Fourteenth Amendment. In arriving at this conclusion it weighed the rights of those asserting either the Establishment or Free Exercise Clause of the First Amendment "both of which are cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other", (pp. 668–669, 90 S.Ct. p. 1411) acknowledging that "it is an essential part of adjudication to draw distinctions, including fine ones, in the process of interpreting the Constitution." (p. 679, 90 S.Ct. p. 1416)

In the *Chicago Joint Board* and *Bright* cases, the plaintiffs were aggrieved by the conduct of private organizations, and their constitutional challenge was based on the theory that the state had, by virtue of the tax exemption, so insinuated itself into that conduct as to have become its author. As a preface to a discussion of those cases it should be said that the plaintiffs' position therein is to be contrasted with that of the present plaintiffs whose challenge is not directed at state supported private conduct but at the state support itself. In the other two cases the actual discriminatory conduct was sought to be

2d 45 (1961); Reitman v. Mulkey, 387 U.S. 369, at p. 378, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).

6. Compare with Reitman v. Mulkey, *supra*.

7. The case discusses the First Amendment but Mr. Chief Justice Burger notes, on p. 667, 90 S.Ct. 1409, that that amendment is binding on the states under the

Fourteenth Amendment. While "the reasoning route by which that result is attained" may be varied (see Sharp v. Sigler, 408 F.2d 966, at p. 970 (8th Cir., 1969)) we must note, for reasons which will hereinafter appear, that the route does not traverse the Fourteenth Amendment's equal protection clause.

enjoined; here, it is only the state encouragement which the plaintiffs want eliminated. This difference in posture may bear upon the weight to be accorded to the prerogatives of private organizations in balancing them against the rights asserted. Nevertheless, in neither instance will the tax exemption transgress the Fourteenth Amendment unless with respect to the particular rights said to be infringed, the state involvement can be said to be significant.

In the *Chicago Joint Board* case, the Court of Appeals for the Seventh Circuit weighed the plaintiff's claimed First-Fourteenth Amendment right to freedom of speech against the defendants' First-Fourteenth Amendment right to freedom of the press [8] in the process of determining whether the defendants' conduct involved state action violating the plaintiff's rights. One factor asserted by the plaintiff as connecting the State of Illinois with the defendants' conduct so as to bring the Fourteenth Amendment prohibitions into play was the grant of a use tax exemption to defendants. The Court of Appeals followed *Walz*, stating 435 F.2d at p. 477:

"The use tax exemption, which newspapers share in common with magazines and periodicals (Time, Inc. v. Hulman, 31 Ill.2d 344, 201 N.E.2d 374), does represent a 'state involvement' in the limited sense that any tax exemption does, but not to a degree which constitutes state participation in the conduct or action of the enterprise granted the exemption. Cf. Walz v. Tax Commission of City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697."

The *Bright* case involved a conflict between the plaintiffs' claimed right to procedural due process and the right to a private education, which right was represented by the defendants. Again, one of the factors advanced by the plaintiffs as state action was the grant of a property tax exemption to a broad class of organizations, including the private school involved in the alleged violation of the plaintiffs' rights. The District Court held as follows:

"There can be no doubt that this supervision and tax exemption constitute action by the State, but the question is whether it constitutes the '*significant* involvement' of the State in the challenged activity so that these actions may be justifiably ascribed to the State itself. *See* Evans v. Newton, *supra*, 382 U.S. [296] at 299, 86 S.Ct. 486 [15 L.Ed.2d 373]; Burton v. Wilmington Parking Auth., *supra*, 365 U.S. at 725, 81 S.Ct. 856; Reitman v. Mulkey, *supra*, 387 U.S. at 380, 87 S.Ct. 1627; Adickes v. S. H. Kress & Co., *supra*, 398 U.S. at 169, 90 S.Ct. at 1614. This court concludes, as did Judge Lord (Pennsylvania v. Brown, *supra*, [D.C.], 270 F.Supp [782] at 790), that, standing alone, the supervision which Indiana exercises over education in private schools and the tax exemption which it gives generally to educational institutions do not so insinuate the State 'into a position of interdependence with [Central Catholic High School] * * * that it must be recognized as a joint participant in the challenged activity * * *.' Burton v. Wilmington Parking Auth., *supra* [365 U.S.] at 725, 81 S.Ct. at 862." (314 F.Supp. p. 1396)

and, in its opinion stated:

" * * * the origins and central meaning of the Fourteenth Amendment and our basic societal values, as expressed by our laws, do *not* indicate that the constitutional requirement of due process which establishes the framework of the relationship between government and individuals should also be the standard for relationships between private individuals and organizations." (p. 1393)

"Although no court has held that a different (less demanding) standard of what constitutes 'sufficient' state

---

8. Both First Amendment rights asserted are protected against state encroachment by the due process clause of the Fourteenth Amendment.

involvement is applicable where there are allegations of racial discrimination, the fact that only a handful of the successful 'state action' cases have not involved challenges to racial discrimination and the considerations of diversity and pluralism suggest this possibility." (p. 1394)

The Court of Appeals affirmed without discussing the tax exemption, referred to the District Court's opinion as a "fine opinion" and stated:

"The district court observed that only 'state action' is within the prohibitions of the Fourteenth Amendment and held that the plaintiffs had failed to demonstrate the requisite governmental involvement. *In so holding, the district court reasoned that the 'state action' doctrine was developed in response to efforts to eliminate private racial discrimination. 314 F. Supp. at p. 1392. Accordingly, it thought that there might be a less demanding standard of what constitutes sufficient state involvement where there are allegations of racial discrimination. 314 F.Supp. at p. 1394. We find it unnecessary to decide whether state action cases not involving attacks on racial discrimination require a more demanding standard of what constitutes sufficient state involvement.* In this case, the state played no role in defendants' expulsion of plaintiffs. Furthermore, as the district court pointed out, other more nebulous relationships between Indiana and this Catholic high school were insufficient to warrant attributing the expulsions of plaintiffs in any way to the actions of the state." (Emphasis ours.)

Thus, in three cases inquiring into the nature of tax exemptions under the Fourteenth Amendment, tax exemptions have been held not to constitute significant state action or involvement. None of those cases was concerned with the equal protection clause.

*Green* is the only case cited dealing with tax exemptions as state action in an equal protection context.[9] In that case, Mississippi parents, in an attempt to circumvent court-ordered desegregation,[10] established segregated private schools and claimed a right to tax exempt status under the Internal Revenue Code of 1954. The right they asserted as against the plaintiffs, Negro taxpayers and their minor children attending public schools, was not, as in *Bright,* the right to a private education. Rather, it was the right to a private education in a segregated manner. The plaintiffs did not quarrel with the right, but contended that government aid in the form of tax exemptions and deductibility of contributions violated *their* rights to equal protection of the laws by giving government support to racial discrimination.

It is not helpful to discuss in detail the manner in which the posture of *Green* was altered while it was pending or the basic ruling, which relied on statutory, not constitutional, grounds.[11] Rather, we shall limit our discussion to the *Green* court's distinction of *Walz* and weighing of equal protection rights as against a claimed right to favored tax treatment despite racial discrimination.

The *Green* court, in rejecting a constitutional defense based on freedom to educate children other than in public schools, weighed that right against the

9. To be accurate, *Green,* which involved Federal legislation and action, was not concerned with the equal protection clause of the Fourteenth Amendment. It was, however, concerned with the equal protection aspect of the due process clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

10. This fact distinguishes *Green* to some extent from this case since nothing in the present record indicates that the court could order desegregation of the organizations the right of which to tax exemptions is challenged. The distinction is weakened, however, when it is noted that the parties agree that the exemptions are granted on the reasoning that the organizations benefitted serve a public purpose.

11. The statutory rights were, to be sure, "infused with constitutional ingredients" and of "consitutional caliber." (p. 1177)

right to equal protection, in the following words:

> "There is a compelling as well as a reasonable government interest in the interdiction of racial discrimination which stands on highest constitutional ground, taking into account the provisions and penumbra of the Amendments passed in the wake of the Civil War. That government interest is dominant over other constitutional interests to the extent that there is complete and unavoidable conflict." (p. 1167 of 330 F.Supp.)

and noted "the dominance of preventing racial discrimination in any balancing of constitutional interests." It distinguished *Walz* on the ground that it dealt with a right other than the right to equal protection [12] and again proceeded to weigh conflicting rights in the following language:

> "Tax exemption benefit is only a 'minimal and remote involvement' (397 U. S. p. 676, 90 S.Ct. 1409) when compared to the kind of identification and support of religion that is prohibited under the Establishment clause. But governmental and constitutional interest of avoiding racial discrimination in educational institutions embraces

the interest of avoiding even the 'indirect economic benefit' of a tax exemption."

The *Green* court adopted, albeit without citation, Judge Eschbach's view in the *Bright* case, *supra,* that equal protection rights are to be accorded a special significance where governmental or state action is in question. As we read the decision it compels a holding that, whatever its nature in other contexts, a tax exemption constitutes affirmative, significant state action in an equal protection context where racial discrimination fostered by the State is claimed.[13]

■ Inherent in our decision and that in *Green* and in any distinction of *Walz, Chicago Joint Board* and *Bright,* is a determination that a different standard must be applied to ascertain state action in cases involving equal protection than in cases involving other rights. Admittedly, much confusion exists in this area. Some courts, without discussing the possibility of any difference, have applied equal protection precedents in due process cases when examining state action.[14] Others have done so with discussion.[15] Others have refused to do so, with[16] and without[17]

---

12. It did not state that *Walz* was limited solely to a religious context and under the aforementioned decisions of the Court of Appeals for this Circuit neither can we.

13. See also Irvis v. Scott, 318 F.Supp. 1246 (M.D., Pa., 1970) where the court stated: (p. 1251)

> "Nothing in what we here say implies a judgment on private clubs which limit participation to those of a shared religious affiliation or a mutual heritage in national origin. *Such cases are not the same as the present one where discrimination is practiced solely on racial grounds and therefore collides head on against the 'clear and central purpose of the Fourteenth Amendment * * * to eliminate all official state sources of invidious racial discrimination in the States.'"* (Emphasis ours.)

14. See, for example, Chrisman v. Sisters of St. Joseph of Newark, (D.Or., 1971) where the plaintiff asserted a right to a sterilization apparently a Ninth Amendment or penumbral right applicable to the

states through the due process clause of the Fourteenth Amendment, Breen v. Kahl, 419 F.2d 1034 (7th Cir., 1969), against a private hospital. In finding the hospital "affected with state action," the court, although dealing with a due process right, cited only two equal protection precedents. One precedent, Sams v. Ohio Valley General Hospital Association, 413 F.2d 826 (4th Cir., 1969) did not involve racial discrimination, but other equal protection problems. It did refer to due process, but that reference was dicta. It too cited only equal protection cases with respect to the state action question.

15. See for example, Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Penn., 1970).

16. See, for example, the District Court opinion in *Bright, supra.*

17. Numerous due process cases can be cited where courts have found no significant state action although the amount of state

discussion. With the unfortunate certainty of complicating the already complex state action concept, we believe that the four tax exemption cases cited above require a holding that the court cannot decide in the abstract or in a vacuum the issue of whether sufficient state action exists to impregnate private conduct with governmental character so as to proscribe that conduct under the Fourteenth Amendment. Rather, it must examine that conduct both in the light of the right it allegedly violates and in the light of the right under which it is asserted to be proper. In making this examination it is crucial, as held in *Green,* that the prevention of racial discrimination is dominant in any balancing of constitutional interests.

 Here, the plaintiffs assert a right to equal protection of the laws against a right of certain organizations to discriminate in their membership on the basis of race and, in the process, obtain tax exemptions which obviously encourage their activities, including racial discrimination, by providing indirect financial aid. Under the reasoning in *Green,* the grant of a tax exemption to such organizations is significant state action encouraging discrimination in violation of the plaintiffs' rights under the equal protection clause of the Fourteenth Amendment and must be enjoined. Our ruling in this regard also disposes of the defendants' motion to dismiss insofar as it relies on failure to allege significant state action, failure to allege a cause of action over which this court has jurisdiction, and failure to present a substantial federal question.

 The motion to dismiss, which was considered with the merits, raises several additional grounds which we need mention only briefly. The defendants first claim that the action is in effect an action against the State [18] by its own citizens not permitted under Article III, Section 2 of the United States Constitution and the Eleventh Amendment. In their argument they admit, however, that if the challenged action of the defendants is patently unconstitutional, an action against them will lie. What we have stated previously reveals our conclusion that the grant of tax exemptions to organizations which practice racial discrimination is, in fact, a violation of the Fourteenth Amendment. This action is therefore proper.

 The defendants further claim that the plaintiffs have failed to allege an actual case or controversy between parties asserting adverse interests but have instead pleaded the existence of a political question. In our opinion a very real controversy exists between the parties as to the propriety of the tax exemptions here challenged. The controversy involves constitutional, not merely political, questions, clearly justiciable in this court.

 Connected with the previous claim, the defendants contend that the plaintiffs are without standing to challenge the constitutionality of § 70.11(4) and § 71.01(3) (a). The plaintiffs originally challenged the tax exemptions as Wisconsin taxpayers representative of a class of "non-caucasian citizens of the United States and taxpayers of the State of Wisconsin, and caucasian citizens of the United States and taxpayers of the State of Wisconsin who are not affiliated with or members of organizations which discriminate in membership on the basis of race." As taxpayers, they alleged that the grant of tax exemptions to organizations which discriminate in their membership on the basis of race violates their Fourteenth Amendment rights to equal protection. Under the teachings of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) we believe that the standing of the plaintiffs to bring this suit cannot be ques-

action described would clearly be sufficient were equal protection involved.

18. The State of Wisconsin was originally joined as a party defendant but the plaintiffs consented to a dismissal as against it.

tioned. In addition in an amended complaint the plaintiff Pitts, who is black, has alleged additional standing in that he asserts that his application for membership in one organization which qualifies for exemption was denied because that organization's national charter and by-laws deny membership to non-caucasians. The answer does not deny the allegations but alleges that representatives of the organization state that he was denied membership for other reasons. We do not believe any issue of fact as to the reasons for the denial of Pitts' membership has been properly raised. His allegations as to the reasons for rejection have not been denied by any party and must be deemed admitted.[19] We consider as of no effect the allegation in the answer to the amended complaint that representatives of the organization which denied admission to Pitts state that that denial was for reasons other than race.[20]

■ The defendants also contend that the plaintiffs have failed to allege irreparable injury which would entitle them to injunctive relief. The plaintiffs have alleged and established the existence of racial discrimination encouraged by the grant of a tax exemption by the State. We believe that the day is long past when such a denial of equal protection of the laws is not considered to be, in and of itself, irreparable injury to those affected.

Section 70.11(4) and § 71.01(3) (a), Wis.Stats., confer special advantages in the form of preferential tax treatment on the organizations they describe. Insofar as they afford benefits to organizations which discriminate in their membership on the basis of race, they are violative of the equal protection clause of the Fourteenth Amendment. The plaintiffs are entitled to a judgment so declaring and to an injunction

against the grant of tax exemptions under the statutes to those organizations.

Counsel for the plaintiffs will prepare a decree pursuant to this opinion and submit it to opposing counsel for approval as to form. As we understand the position of the plaintiffs, the order will impose upon the defendants the duty of questioning organizations claiming an exemption about whether their constitutions, by-laws or actual practices require discrimination in membership on the basis of race and of denying exemptions to organizations which answer those questions affirmatively. This decree will not interfere with any right of any organization to discriminate in membership on the basis of race, but will specify that organizations which choose to do so may no longer qualify for preferential tax treatment under § 70.11(4) and § 71.01(3) (a) Wis.Stats.

---

19. Rule 8(d), Federal Rules of Civil Procedure.

20. That organization and others declined to join in this action when given an oppor-

tunity to do so. It cannot complain, therefore, over being unable to raise an issue of fact which the parties have not raised.