STATE of Wisconsin EX REL. Theodore S. PALLEON, Charles Lescrenier, Ronald C. Shikora and Irvin T. Aaron, Independence Lodge #80, Free & Accepted Masons and Excelsior Masonic Temple Association, Petitioners-Respondents,†

v.

Mark E. MUSOLF, Wisconsin Department of Revenue, Charles Dossett a/k/a Charles Dossette, Edward H. Snyder, Wisconsin Tax Appeals Commission and Wisconsin Department of Revenue, Appellants.

Court of Appeals

*No. 82–1487. Argued November 9, 1983.—*
*Decided January 26, 1984.*
(Also reported in 345 N.W.2d 73.)

† Petition to review granted.

For the appellants there were briefs by *Bronson C. La Follette,* attorney general, and *William H. Wilker,* assistant attorney general, and oral argument by *William H. Wilker,* assistant attorney general.

For the petitioners-respondents there was a brief by *Stewart G. Honeck* and *Honeck, Mantyh & Arndt* of Milwaukee, and oral argument by *Stewart G. Honeck.*

Before Gartzke, P.J., Dykman, J. and Gordon Myse, Reserve Judge.

GORDON MYSE, Reserve Judge. This is an appeal from a judgment reversing on *certiorari* an order of the Wisconsin Department of Revenue (department) which revoked the respondent masonic lodge's state income and property tax exemptions. We reverse the judgment of the circuit court and affirm the order of the department. The issue presented is whether the circuit court erred in finding that the record did not support the department's determination that the Independence Lodge discriminated on the basis of race in reviewing applications for membership.[1]

---

[1] Respondents raise additional issues in their brief challenging the order of the department. We reject their contentions.

The department was within its authority to revoke the tax exemptions. The statutory grant of tax exempt status must be applied in a manner consistent with the fourteenth amendment. Organizations which discriminate on the basis of race in their membership practices may not be accorded exemption because of the fourteenth amendment's guarantee of equal protection of the laws. *See Pitts v. Department of Revenue for State of Wisconsin,*

The department is prohibited by the fourteenth amendment's equal protection clause from granting state income or property tax exemptions[2] to organizations practicing racial discrimination in their admission of members. A federal court decree issued in 1971 enjoined the department from doing so. *See Pitts v. Department of Revenue for State of Wisconsin,* 333 F. Supp. 662 (E.D. Wis. 1971). Pursuant to this decree and the fourteenth amendment, the department, after hearings prompted by appellant Dossette's complaint to the department, found the respondent lodge not entitled to the state tax exemption, "because of its policies and practices which discriminate

---

333 F. Supp. 662, 670 (E.D. Wis. 1971). The Wisconsin Supreme Court endorsed the department's investigation of the admissions practices of masonic lodges in *Grand Lodge-Free & Accepted Masons v. Conta,* 84 Wis. 2d 701, 706, 267 N.W.2d 375, 378 (1978). Revocation of exempt status by the department for those lodges found to discriminate is simply a logical conclusion.

If the burden of proof was placed on the lodge in the administrative hearings, no due process guarantee was violated. "The burden of showing that property is exempt from taxation is on the one seeking the exemption . . . ." *Sisters of St. Mary v. City of Madison,* 89 Wis. 2d 372, 379, 278 N.W.2d 814, 817 (1979).

The decision of the circuit court in *State ex rel. Kenwood Lodge #303 v. Conta,* No. 78–CV–501 slip op. (Dane County Cir. Ct. Sept. 14, 1979), is not *res judicata* as to this action. "In order for *res judicata* to bar an action, there must be an identity of parties and of the issues sued on." *First Nat. Bank of Wis. Rapids v. Dickinson,* 103 Wis. 2d 428, 439, 308 N.W.2d 910, 915 (Ct. App. 1981).

Neither requisite is met. The respondent lodge was not a party to that action. Further, the decision merely held that "the fact that no black is a member of any of the petitioner lodges does not, by itself, establish a prima facie case of discrimination . . . . [N]o evidence was presented of any black person applying to or being rejected from *membership* in any of the . . . lodges." *Kenwood Lodge,* slip op. at 4. The issue presented on this appeal does involve the rejection of a black for membership.

[2] *See sec.* 71.01(3)(a), Stats. (income); sec. 70.11(4), Stats. (property).

against persons of the black race." Dossette is a black male.

Admission to the respondent masonic lodge is governed by a detailed procedure. Applicants must be nominated upon their request by two members. Solicitation of members is not allowed. The applicant is then interviewed by an investigation team, which reports to a "Masters Board" which screens applicants. The lodge membership then secretly votes on the applicant. Members deposit a white ball in the ballot box if they favor the applicant's membership, or deposit a black cube if they are opposed. One black cube denies membership, although the master of the lodge may call for a discretionary second ballot.

Dossette was reported on favorably by his investigation team, and his membership was recommended by the masters board. Dossette and four other applicants were present at the lodge and were voted on in November 1976. At the vote one or more black cubes were cast against the first applicant. A second ballot was called, with the master announcing that a mistake had been made because both the applicant's father and uncle were masons. No black cubes were cast on the second ballot. No black cubes were cast against the other three applicants.

At least two black cubes were cast in Dossette's initial balloting. The master announced that a mistake had been made, and a second balloting was held. At least two black cubes were again cast, rejecting Dossette's membership.

From May 1969 to November 1976 no applicants were rejected other than the appellant, and no members were black of a total membership of approximately 580. Most of the lodge's membership is drawn from the City of Milwaukee and surrounding Milwaukee County. As of 1970, approximately fifteen percent of the city's residents were black, while approximately ten percent of the county's residents were black. Dossette was the lodge's first black applicant. Testimony was received from a lodge member

that other members had indicated, directly and indirectly, that blacks should never be admitted to the lodge.

## Standard of Review

In reviewing a circuit court order reversing an order of an administrative agency,[3] an appellate court's scope of review is the same as that of the circuit court. *L & H Wrecking Co., Inc. v. LIRC,* 114 Wis. 2d 504, 508, 339 N.W.2d 344, 346 (Ct. App. 1983).

The circuit court found the record devoid of substantial evidence to support the department's findings. The test on *certiorari*[4] for sufficiency of the evidence is the substantial evidence test. *Stacy v. Ashland County Dept. of Public Welfare,* 39 Wis. 2d 595, 602, 159 N.W.2d 630, 634 (1968). The test is whether reasonable minds could arrive at the same conclusion reached by the department. *Id.* at 603, 159 N.W.2d at 634.

## Substantiality of the Evidence

Undisputed facts disclose that the applicant's membership is assured when the investigation of the applicant results in a favorable report. During the five years pre-

---

[3] The Department of Revenue is analogous to an agency for purposes of standard of review. *Cf.* sec. 227.01(1), Stats: "'Agency' means any board, commission, committee, department or officer in the state government, except the governor or any military or judicial officer of this state."

[4] *Certiorari* was proper here because the department is excluded from ch. 227, Stats., review. Section 227.15 states:

Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter, except for the decisions of the department of revenue . . . .

ceding the incident in question, no applicant was rejected for membership. There are no black members in the lodge located in a community where blacks comprise between ten and fifteen percent of the total population. Dossette was rejected for membership by the Independence Lodge after he completed the screening and was recommended for membership as a result. The lodge's method of balloting for membership permitted the casting of a single black cube to deny membership to any applicant.

The Department of Revenue determined that the rejection of Dossette's application for membership was based upon his race. While the Independence Lodge contends that there may have been several nondiscriminatory reasons for the rejection of this applicant's petition for membership, the department's determination that it was based upon racial considerations is supported by substantial evidence. Reasonable minds could arrive at the same conclusion.

The circuit court seemed troubled that there was no direct evidence that the black cube was cast because of Dossette's race. Rarely, if ever, is racial discrimination subject to direct proof such as appears to be required by the circuit court. "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977) (disparate treatment analysis under Title VII). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts . . . ." *Washington v. Davis*, 426 U.S. 229, 242 (1976) (constitution-based claim of racial discrimination).

Some lodge members stated their intention to reject black applicants because of their race. Testimony was received regarding members' positions:

Well, Earl's statement was always almost the same, I'd rather pay taxes than let blacks in. I don't know how many times I heard that from him. Everett was more indirect when he told me about his experiences with blacks and the fact that they beat up on white old ladies. Ted Drought, the only comment I remember from him is let them stay where they belong.

The method of voting was susceptible to exclusion of blacks. This, together with the other evidence in the case, provided substantial evidence for the determination reached by the Department of Revenue. Even though it was not demonstrated that those who had publicly announced their intention to vote against the applicant because of his race were present during the voting, or that there may be other reasons to explain the casting of the black cube, the department's determination was reasonable. This is so, regardless of the lodge's contention that racial discrimination is contrary to its precepts and is abhorrent to its philosophy.

■ The lodge argues that the decree in *Pitts v. Department of Revenue for State of Wisconsin,* 333 F. Supp. 662 (E.D. Wis. 1971), applies only to organizations whose constitution and by-laws contain restrictions on membership based upon race. Because the constitution and by-laws of the lodge do not exclude members on the basis of race, they argue that they do not fall within the parameters of the *Pitts* decree and therefore are not subject to loss of tax-exempt status. Such an interpretation is too narrow a reading of *Pitts*. The decree specifically refers to "actual practices," which extends the inquiry beyond the lodge constitution and bylaws. The *Pitts* decree would be violated by an interpretation which permitted racially discriminatory practices which were not explicitly embodied in the organization's constitution and bylaws. An organization which practices racial discrimination,

whether compelled by its bylaws or by the unlawful motivation of a small number of its members who may veto any proposed member, may not be granted preferential tax treatment consistent with equal protection of the law.

The lodge further argues that the term "practice" means not a single isolated act of racial discrimination but rather a history of racially discriminatory acts. We do not adopt this definition, because *all* discrimination is prohibited. Constitutional rights may not be violated on even a single occasion. One racially discriminatory act is sufficient to invoke the restrictions of *Pitts*.

This court accordingly affirms the department's determination that the Independence Lodge discriminated against Dossette based upon his race. There was substantial evidence to support its determination. The judgment of the circuit court is reversed.

*By the Court.*—Judgment reversed.

GARTZKE, P.J. (dissenting). I dissent. I agree with the trial court that substantial evidence is lacking for the department's finding that the lodge discriminates against black persons in its membership policy and practices.

The majority state that undisputed facts disclose that membership to the appellant is assured when the investigation of an applicant for membership results in a favorable report. The department made no such finding. I am aware of no evidence in the record to that effect. During the five years preceding the incident no applicant was rejected from membership, but that is a far cry from the majority's position that membership is assured if an investigation is favorable. The secret vote on membership precludes assurance to any applicant.

The majority point out that there are no black members in the lodge which is located in a community where blacks comprise ten to fifteen percent of the population. True,

but never before has a black applied for membership in this lodge.

The majority note that the lodge's method of membership balloting permits one vote to deny membership to an applicant. True, but the question is whether Mr. Dossette's race is the reason two votes were cast against his membership.

The majority state that some lodge members stated their intention to reject black applicants because of their race. The basis for that statement is the testimony quoted by the majority. It is undisputed that the lodge has about 580 members, that the department found that about twenty-five members were present during the vote, and that the record is devoid of evidence that any of the three members identified in the quotation cast a vote on Mr. Dossette's membership.

I conclude no basis exists for a reasonable inference as to why two unidentified members voted against Mr. Dossette's application. Consequently, substantial evidence for the department's finding of discrimination is lacking, unless the lodge's method of voting is condemned as per se discriminatory.

The secret one-vote-veto or blackball method of voting is not per se discriminatory. I would judicially notice that it is used by many fraternal and sororal organizations as well as business and professional partnerships and associations for reasons having nothing to do with discrimination. The department's ruling in this case means, however, that those organizations may continue to use that method of voting on membership applications by persons who do not belong to a minority group but must abandon it as to applications by members of a minority to avoid a finding of discrimination, whether or not discrimination occurs.

In the absence of evidence indicating that the lodge has adopted the black cube method of voting for the purpose

of hiding a discriminatory vote, I would affirm the trial court.

I add that I am aware that discrimination can rarely be proven by direct evidence. Had it been shown that the members who made discriminatory comments had voted or that other qualified black persons had been rejected with or before Mr. Dossette, I would have concluded that the department's findings were supported by substantial evidence.