**VIC HANSEN & SONS, INC., Petitioner-Respondent,**

**v.**

**OFFICE OF the COMMISSIONER OF TRANSPORTATION and Department of Transportation, Appellants.†**

Court of Appeals

*No. 85-0978. Submitted on briefs August 13, 1986.—Decided September 25, 1986.*

(Also reported in 395 N.W.2d 631.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the appellants the cause was submitted on the briefs of *Bronson C. La Follette*, attorney general, and *Daniel D. Stier*, assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Gary L. Antoniewicz* and *Leslie F. Kramer* and *Antoniewicz*, Gregg & Rona, S.C., of Madison.

For the intervenor-respondent, Wisconsin Automobile and Truck Dealers Association, Inc., the cause was submitted on the brief of *Paul R. Norman* and *Wheeler, Van Sickle, Anderson, Norman & Harvey, S.C.*, of Madison.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.    The Department and Commissioner of Transportation appeal from an order reversing the commissioner's suspension of Hansen's automobile dealer's license. The issues are: (1) whether the commissioner erroneously applied the "reckless disregard for the truth" standard in concluding that Hansen violated the dealer licensing law; and (2) whether the commissioner properly determined that Hansen knew or should have known that the odometers on several vehicles sold to customers were likely to have been altered. We conclude that the commissioner correctly determined the issues, and we reverse.

The department charged Hansen, a Beloit auto dealer for more than thirty years, with selling used automobiles under circumstances where it should have

known of a high probability that the cars' odometers had been turned back. The charges were based on the federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. secs. 1981-1991 (1982), and on sec. 218.01(3)(a), Stats. The federal act requires a dealer to disclose to the buyer the vehicle's cumulative mileage as registered on the odometer, and, if the odometer reading is known by the dealer to be different from the actual number of miles traveled, to state that the actual mileage is unknown.

Section 218.01(3)(a), Stats., provides in part that a dealer's license may be denied, suspended, or revoked on the following grounds:

4. Wilful failure to comply with any provision of this section or any rule or regulation promulgated by the licensor under this section.

5. Wilfully defrauding any retail buyer to the buyer's damage.

. . . .

8. Having made a fraudulent sale, transaction or repossession.

9. Fraudulent misrepresentation, circumvention or concealment through whatsoever subterfuge or device of any of the material particulars or the nature thereof required hereunder to be stated or furnished to the retail buyer.

. . . .

14. Having violated any law relating to the sale, distribution or financing of motor vehicles.

. . . .

28. Wilful failure to provide and maintain facilities and business records as required by this section or by any rule promulgated by the licensor pertaining to facility and business records.

The commissioner concluded that Hansen had: (1) violated secs. 218.01(3)(a)5, 8 and 9, Stats., by certifying as accurate odometer readings on twenty-two vehicles when it had good reason to know the readings were false; (2) violated sec. 218.01(3)(a)14 by knowingly giving false odometer statements to twenty-two retail purchasers; and (3) violated secs. 218.01(3)(a)4 and 28 by retaining incomplete prior owners' odometer statements in violation of provisions of the administrative code.[1] Hansen sought review of the commissioner's determination under ch. 227, Stats., and the circuit court reversed.

## I. ERRORS OF LAW

The parties agree that it is necessary to establish that a dealer act with "reckless disregard of the truth" in order to meet the "fraud" or "intent to defraud" requirements of sec. 218.01(3)(a), Stats. They differ on the degree of proof necessary to invoke the statutory remedies, however. The commissioner based his decision on what Hansen reasonably should have known as to the accuracy of the odometer readings. The circuit court held that such a test cannot be equated with reckless disregard of the truth and reversed.

On appeal, we conduct an independent review of the commissioner's decision, and the scope of our review is identical to that of the circuit court. *State ex rel. Palleon v. Musolf*, 117 Wis.2d 469, 473, 345 N.W.2d 73, 75 (Ct. App.), *aff'd*, 120 Wis.2d 545, 356 N.W.2d 487 (1984). Where, as here, the question is one of law, and the commissioner's expertise is immaterial to resolution

---

[1] Hansen does not challenge the commissioner's determination that he accepted incomplete statements on the twenty-two vehicles.

of the issue, we owe no deference to his decision. *Robert Hansen Trucking, Inc. v. LIRC,* 126 Wis.2d 323, 331, 377 N.W.2d 151, 154-55 (1985).

Hansen argues that "reckless disregard" generally means something more than simple negligence and requires conduct which is more unreasonable and wanton than mere negligence. Hansen does not further describe the type of conduct which might constitute reckless disregard for the truth, stating only that it must be something "more" than constructive knowledge.

We believe the matter is settled by *Christianson v. Lease Associates, Inc.,* 87 Wis.2d 123, 127, 273 N.W.2d 776, 778 (Ct. App. 1978). There, the court expressly adopted the "reckless disregard" standard developed in *Jones v. Fenton Ford, Inc.,* 427 F. Supp. 1328 (D. Conn. 1977). The issue before the *Jones* court was:

> whether a plaintiff must prove knowing and wilful concealment of an odometer defect by a dealer in order to recover damages under the statute, or whether it is sufficient to show that the dealer or its agents *should have known* of a defect, and then either failed to discover it or to adequately alert the purchaser. [Emphasis in original.] *Id.* at 1333.

The court held that the latter standard applied, noting that the intent of odometer tampering legislation is to impose an affirmative duty upon auto dealers to discover such defects. The court concluded that, if the dealer's representation could be shown to have been made with reckless disregard of the truth, the "intent to defraud" requirement would be satisfied and that the violation is sealed when the dealer "knew, or should have known, that the true mileage of the vehicle was indeterminate, and yet failed to so inform the [buyer]."

*Id.* at 1330.[2] In *Christianson,* the court recognized *Jones* as correctly interpreting the "intent to defraud" provisions of the law. *Christianson,* 87 Wis.2d at 127, 273 N.W.2d at 778.

*Nieto v. Pence,* 578 F.2d 640, 642 (5th Cir. 1978), reached a similar conclusion.

> [A] transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence. [Footnote omitted.]

*Accord Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248, 1253–54 (8th Cir. 1983); *Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir. 1979); *Kantorczyk v. New Stanton Auto Auction, Inc.,* 433 F. Supp. 889, 893 (W.D. Pa. 1977).

---

[2] The *Jones* court adopted the basic civil definition of fraudulent intent:

> [C]ivil liability may be imposed where it is proved that a defendant's statements were made recklessly or carelessly, without knowledge of their truth or falsity, or without reasonable grounds for belief in their truth, especially in a case where (1) the defendant was under a duty to have the knowledge in question, (2) a relation of trust or expert reliance existed, (3) a statement was made to induce a business arrangement, or (4) the knowledge or information in question was within the special province of the defendant. Such conditions being met, it does not matter whether or not the declarant actually believed the statement (or statements) in question to be true. *Id.* at 1334.

We conclude that the commissioner did not err when he determined that Hansen, in the exercise of reasonable care, should have known that the actual mileage of the cars was more than that recorded on the odometers or stated in the previous owners' statements.

## II. SUFFICIENCY OF THE EVIDENCE

Hansen argues (and the trial court concluded) that the record fails to support the commissioner's "finding" that, by November, 1980, Hansen "knew or should have known" that the odometers on the subject vehicles were likely to have been altered.

The test on review of agency findings of fact is whether, considering the record as a whole, substantial evidence supports the challenged finding. Section 227.57(6), Stats. The commissioner's finding may meet the substantial evidence test even though it is contrary to the great weight and clear preponderance of the evidence. *Robertson Transport. Co. v. Public Serv. Comm.*, 39 Wis.2d 653, 658, 159 N.W.2d 636, 638 (1968). The inquiry is whether, considering all the evidence in the record, "reasonable minds could arrive at the same conclusion as the agency." *Madison Gas & Elec. Co. v. Public Serv. Comm.*, 109 Wis.2d 127, 133, 325 N.W.2d 339, 343 (1982), quoting *Sanitary Transfer & Landfill, Inc. v. DNR*, 85 Wis.2d 1, 14, 270 N.W.2d 144, 150 (1978).

But the challenged "finding" is not a finding of fact. The commission was drawing an inference from the historical facts. The determination that a party reasonably should have known a fact is a legal conclusion, for it

depends upon the application of a general principle to an underlying set of facts. Whether, on these facts, Hansen reasonably should have known that the automobiles' odometers were likely to have been rolled back is a question of law. As we have said, we ordinarily do not defer to the agency's decision on such questions. *American Motors Corp. v. ILHR Dept.*, 101 Wis.2d 337, 353–54, 305 N.W.2d 62, 70 (1981). We do, however, pay deference to the agency in some situations. Section 227.57(10), Stats., provides that upon review of an agency's determination "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency . . . ." And, "[w]here a legal question is intertwined with factual determinations or with value or policy determinations . . . a court should defer to the agency which has primary responsibility for determination of fact and policy." *West Bend Education Ass'n v. WERC*, 121 Wis.2d 1, 12, 357 N.W.2d 534, 539–40 (1984). In this case, the inference drawn by the commissioner was so intertwined with his factual and policy determinations that his conclusion is entitled to deference.

Our first inquiry is whether the commissioner's findings of underlying fact are supported by substantial evidence. The commissioner found the following facts, among others: (1) a late-model, low mileage used car recently titled to an out-of-state dealer is likely to have had its odometer altered; (2) all the subject vehicles were late-model, low-mileage cars titled to out-of-state dealers; (3) the odometers on all forty-four cars had been rolled back between 6,000 and 60,000 miles; (4) in 1976 and again in 1980, the Wisconsin Automobile and Truck Dealers Association (WATDA), of which Hansen was a member, notified all members in writing identifying

Kentucky as a state known to harbor dealers trafficking in vehicles with rolled-back odometers—the 1980 notice named individual dealers from Murray, Kentucky, as particularly suspect; (5) on October 14, 1980, the Division of Motor Vehicles notified all Wisconsin dealers that many Kentucky wholesalers were tampering with odometers, and suggested that reasonable care be exercised in acquiring Kentucky vehicles and certifying their mileage; and (6) in November, 1980, Hansen learned that a car acquired from a Kentucky dealer had its odometer rolled back approximately 29,000 miles.

Hansen challenged only the finding that the odometers on late-model, low mileage used cars recently titled to out-of-state dealers are likely to have been altered.[3] That finding has adequate support in the record, particularly in the testimony of James Peterson, a long-time department employee whose responsibilities require knowledge of odometer tampering activities throughout the country.

Wisconsin accepts a simple "dealer assignment form" as adequate evidence of title—and this is the usual method of doing business. Peterson testified that there is no reason for a dealer in another state to apply for and take title to a car intended to be sold to a Wisconsin dealer. According to Peterson, a major component of illegal odometer tampering is "title laundering," where a dealer applies for a new certificate of title to an acquired vehicle in order to camouflage the true chain of ownership and distort the mileage statements required to be made upon each transfer. Peterson testi-

---

[3] Hansen did challenge a second factual finding regarding the sale of an automobile with defective tires. However, we do not consider the finding necessary to either the commissioner's decision or our own.

fied that this practice is so prevalent and so well known in the trade that at least one state has prohibited its dealers from taking title to acquired vehicles. Thus, according to Peterson, if a dealer obtains a late-model car with a recently-applied-for title to an out-of-state dealer, "there is a good chance that [the] odometer on that vehicle has been tampered with." Given this testimony, the commissioner could properly find as he did.

This finding, together with the other unchallenged findings of fact, provides an adequate basis for the commissioner to reasonably conclude that Hansen should have known of the liklihood that the odometers on the cars in question had been altered. As we have said, the conclusion is really an inference arising from the historical facts as found. Given those fact, the inference is reasonable. It was also reasonable for the commissioner to charge Hansen with knowledge of the likelihood that the odometers in the cars in question had been rolled back.

■

All the subject vehicles were late-model, ostensibly low mileage used cars recently titled to out-of-state dealers, cars the commissioner found are likely to have had their odometers altered. All were from Kentucky, an area specifically mentioned in the department's warning to Hansen and other licensed Wisconsin dealers as a center of odometer-tampering activities. Hansen also became aware of odometer tampering on a Kentucky car it acquired in 1980. When a department investigation revealed that the car's odometer had been altered, Hansen repurchased the vehicle from the customer and returned it to the Kentucky dealer. These and the other material facts found by the commissioner, all of which find support in the record, caused him to conclude that

Hansen, in the exercise of ordinary care, should have been put on notice that the Kentucky cars were suspect. This conclusion is so intertwined with the commissioner's findings of the underlying facts and determination of policy that it is entitled to weight on appeal. It is a reasonable conclusion and should be affirmed.

*By the Court.*—Order reversed.