HAHN, Appellant, v. WALWORTH COUNTY and another, Respondents.

*June 5—June 27, 1961.*

150

The cause was submitted for the appellant on the brief of *Genoar & Braden* of Lake Geneva, and for the respondents on the brief of *Philip B. Morrissy,* corporation counsel of Walworth county, attorney, and *Roscoe R. Luce* of Elkhorn of counsel.

CURRIE, J.   Sec. 70.11 (4), Stats.,[1] exempts from real-estate taxes property "owned and used exclusively by . . .

---

[1] Sec. 70.11 (4) provides as follows:

"Property owned and used exclusively by educational institutions offering regular courses six months in the year; or by churches or religious, educational or benevolent associations, including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; or by women's clubs; or by domestic, incorporated, historical societies; or by domestic, incorporated, free public library associations; or by fraternal societies operating under the lodge system (except university, college, and high school fraternities and sororities), but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. Leasing such property to similar organizations for educational or benevolent purposes, where all the income derived therefrom is used for maintenance, shall not render the property taxable."

educational or benevolent associations." It is the position of the plaintiff that he purchased the Stone Manor premises as agent for an educational and benevolent association under circumstances whereby a fiduciary relationship exists between him and such association so that he holds the legal title as trustee for such association, the beneficial owner. Such association at the time the plaintiff purchased the property in 1945 was the Annie Merner Pfeiffer Foundation, Inc., the name of which was subsequently changed to Korean Foundation, Inc. This Foundation is a nonprofit corporation incorporated under the laws of Illinois.[2] While its articles of incorporation are not before us, the affidavits on the motion for summary judgment establish that its purposes are solely educational and benevolent.

The five principal issues on this appeal are:

(1) May an educational and benevolent association *"own"* property within the meaning of sec. 70.11 (4), Stats., where legal title thereto is vested in an individual, who holds such title in trust for the association?

(2) Does the exemption accorded by such statute extend to educational and benevolent associations incorporated under the laws of states other than Wisconsin?

(3) Is the plaintiff's action barred by lapse of time or laches?

(4) Is the plaintiff a proper party to raise the issue of exemption?

(5) Are there any material facts in dispute to be tried which prevent summary judgment being entered in favor of the defendants?

---

[2] A corporation is embraced within the word "association" as used in sec. 70.11 (4), Stats. *St. John's Military Academy v. Edwards* (1910), 143 Wis. 551, 128 N. W. 113. The statute there before the court was sub. 3, sec. 1038, R. S. 1898, predecessor to sec. 70.11 (4).

*Effect of Legal Title Being Vested in Trust for
Benefit of a Benevolent Association.*

The affidavit of Norman R. Karow, an assistant cashier of the Harris Trust & Savings Bank of Chicago, avers that to his personal knowledge the plaintiff purchased the Stone Manor property in 1945, "on behalf of the Annie Merner Pfeiffer Foundation, Inc., as its fiduciary agent to carry out the purposes of the Foundation." The affidavits of Carol W. Lingott and Eun Taik Yi, the latter an ordained minister of the Korean Methodist Church in Chicago for twenty-five years, are to the same effect. The Karow affidavit also states that the plaintiff was unable to transfer title to the Foundation, not only because of litigation involving title to the premises, but also because of litigation pending between the executors of the Annie Merner Pfeiffer estate and the Foundation.

These affidavits tend to establish that while legal title was vested in the plaintiff, he was in fact holding the same in trust for the Foundation so that the beneficial ownership was in the latter. It is the contention of the defendants that this in itself prevents the property from being exempt under sec. 70.11 (4), Stats., because the property is not *"owned"* by the Foundation.

This precise issue apparently has not been directly passed upon heretofore by this court. The issue was raised in *Katzer v. Milwaukee* (1899), 104 Wis. 16, 79 N. W. 745, 80 N. W. 41, but the court found it unnecessary to there decide it because it was determined that the plaintiff had failed to prove that he held title to the property in question for a religious association. However, in *Ritchie v. Green Bay* (1934), 215 Wis. 433, 254 N. W. 113, a vendee under a land contract, where legal title remained vested in the vendor, was held to be the *"owner"* under this same exemption statute on the ground that such a vendee is the owner for all prac-

tical purposes. In commenting upon the *Katzer Case,* the court in the *Ritchie Case* stated (p. 436) :

"In the *Katzer Case* it is intimated that a cestui, in cases where its control over the use and title of the property was sufficiently complete to constitute practical ownership, might be treated as owner for purposes of exemption."

84 C. J. S., Taxation, p. 448, sec. 231, lays down the rule that, "where the title is held in trust, its right to exemption is determined by the nature of the beneficial interest." Cases which support such text are *National Bank of Burlington v. Huneke* (1959), 250 Iowa 1030, 98 N. W. (2d) 7, 12, and *Estate of Cooper* (1940), 229 Iowa 921, 295 N. W. 448, 451.

It is our conclusion that an educational and benevolent association, such as the affidavits establish the Foundation to be, which is the cestui of the trust, may be an *"owner"* of property within the meaning of sec. 70.11 (4), Stats., although legal title is vested in the trustee. Whether such a cestui is such an owner will depend on whether control over the use and title of the property by the association is sufficiently complete to constitute practical ownership by it. *Katzer v. Milwaukee, supra,* page 24.

*Effect of Incorporation in Another State.*

The defendants advance the argument that there can be no exemption here because the Foundation is incorporated in Illinois.

Sec. 70.11 (4), Stats., contains no provision that a religious, educational, or benevolent association must be domiciled or incorporated in Wisconsin in order that Wisconsin property, which is owned and used exclusively by it, be exempt from tax. However, subs. (1) and (2) of sec. 72.04 which exempt transfers to certain associations and

corporations from inheritance tax, do require, with certain exceptions, that they be organized in Wisconsin. We are of the opinion that if the legislature had intended such requirement in sec. 70.11 (4), it would likewise have specifically so provided. The defendants' contention in this respect is without merit.

*Is Plaintiff's Action Barred by Lapse of Time or Laches?*

Sec. 75.61 (1), Stats., requires that any action to set aside a tax sale, or restrain the issuing of a tax deed, for any error going to the validity of the assessment shall be commenced within one year from the date of such tax sale and not thereafter. Sec. 75.62 (1) provides that within twenty days after the commencement of such an action the plaintiff, as a condition of maintaining the same, must pay the amount of the taxes involved in the action together with interest and charges. However, in *Trustees of Clinton Lodge v. Rock County* (1937), 224 Wis. 168, 272 N. W. 5, this court held such two statutory provisions to be inapplicable to an action, such as the instant one, grounded solely upon the claim that the property is exempt from tax.

The defendants now ask us to overrule *Trustees of Clinton Lodge v. Rock County, supra.* We decline to do so. Twenty-four years have now elapsed since that case was decided by this court, and the legislature has not seen fit to amend secs. 75.61 (1) and 75.62 (1), Stats., to make them applicable to actions, which assert the invalidity of tax sales, grounded solely on the claim that the property taxed was exempt. The construction given to a statute by the supreme court becomes a part of the statute when the legislature does not subsequently amend the statute so as to effect a change. *Meyer v. Industrial Comm.* (1961), 13 Wis. (2d) 377, 382, 108 N. W. (2d) 556, and *Eau Claire Nat. Bank v. Benson* (1900), 106 Wis. 624, 627, 82 N. W. 604.

The defendants point to no statute other than secs. 75.61 (1) and 75.62 (1), which they contend bars the plaintiff's action, but they assert that it is barred by laches. However, one of the three essential elements of the defense of laches is prejudice to the party asserting such defense caused by the delay in instituting the action. *Estate of Seefeldt* (1957), 1 Wis. (2d) 509, 516, 85 N. W. (2d) 500. The defendants point to no facts in the record tending to prove that either the defendant county, or defendant county clerk, has been prejudiced by the plaintiff's delay in instituting the action. Therefore, the action is not barred by laches.

### *Right of Plaintiff to Litigate Issue of Exemption.*

The defendants further contend that the plaintiff has no interest in the controversy over exemption. No authorities are cited in the defendants' brief in support of such contention.

Sec. 260.15, Stats., expressly authorizes the trustee of an express trust to sue without joining the beneficiary as a party. We deem that such statute authorizes the plaintiff to maintain the instant action.

### *Appropriateness of Summary Judgment.*

In order for the defendants to be entitled to summary judgment, it is necessary that the record disclose that there is no material issue of fact to be tried on the question of exemption from tax. *Hintz v. Zion Evangelical United Brethren Church* (1961), 13 Wis. (2d) 439, 442, 109 N. W. (2d) 61.

On the issue of ownership, as hereinbefore pointed out, the averments of the Karow, Lingott, and Eun Taik Yi affidavits tend to establish that the Foundation was the equitable owner of the Stone Manor premises. The defendants,

in support of their motion for summary judgment, filed the affidavit of Hugh L. Burdick, city attorney of Lake Geneva. Attached to such affidavit and made a part thereof is a letter which the plaintiff wrote Burdick in August, 1955, in which the plaintiff sets forth the uses to which the Stone Manor premises were put subsequent to 1937, including those made of it by the plaintiff and his wife after title was acquired in the plaintiff's name in 1945. Nowhere in such letter does the plaintiff mention the Foundation. However, construing such letter most favorably to the defendants, the inference to be drawn therefrom merely puts in dispute the Karow, Lingott, and Eun Taik Yi affidavits, thereby demonstrating that there is a disputed issue of material fact which cannot be disposed of by summary judgment.

The defendants contend that irrespective of the issue of ownership, the affidavits establish that the property was not exclusively used by the Foundation during the years 1948 to 1955, inclusive. Exclusive use by the Foundation is essential to establish exemption. This makes necessary a resumé of the evidentiary facts set forth in the various affidavits bearing on such issue.

Stone Manor is a large, ornate, white, stone mansion situated on eight and one-half acres of land on the shore of Lake Geneva. The building itself is 74 by 70 feet and is 65 feet high with 250 feet of veranda area. There are 137 large plate-glass windows, 137 copper screens, and 134 mahogany and bird's-eye maple doors. Altogether, it has over 50 rooms, including kitchens, refrigeration rooms, butlers' pantries, servants' dining room, etc.

From 1937 to 1945 the premises were owned and occupied by the Episcopalian Order of St. Ann and operated as a girls' boarding school and summer camp. Such school and summer camp were continued after the plaintiff acquired legal title during the years 1945 to 1947, inclusive. In the

summer of 1948 the premises were leased to a Major and Mrs. Brown, who operated the Sherwood Boarding School, who used the premises for a summer school and camp for their students. Since 1949 the premises have been primarily used as the office of the Foundation and as a cultural center for Korean students and Korean educators, many of whom have been furnished free room and board. Some of such Korean students have been paid modest hourly wages to do maintenance work about the premises. Korean music festivals have also been held on the premises.

While the plaintiff was in Washington during the Korean War and thereafter, the plaintiff's wife, with the knowledge and approval of the Foundation, has rented some of the rooms during the summer seasons to tourists and non-Korean students in order to obtain money to maintain the premises, which income has proved insufficient for such purpose. Since 1949 the plaintiff's wife has resided on the premises and so has the plaintiff when not in Washington.

Much of the foregoing evidence is ambiguous in character in that it is open to different interpretations and inferences. One of these is that all of the afore-described activities carried on in the premises since 1945 by the plaintiff and his wife were done by them in behalf of the Foundation in the furtherance of its objectives. Another equally tenable inference is that many of such activities were the individual acts of the plaintiff and his wife subject to no control on the part of the Foundation. Because of such conflicting inferences, the defendants are not entitled to summary judgment.

The fact that rooms were rented out to tourists and others would not destroy the exemption, if such activity was merely incidental to the primary benevolent uses to which the property was put, and if the income derived therefrom was devoted to maintaining the premises so that such primary benevolent

activities could be continued. *Madison Particular Council v. Dane County* (1944), 246 Wis. 208, 16 N. W. (2d) 811.

The defendants attempt to interject the issue that the uses to which the premises have been put violate the zoning ordinance of the city of Lake Geneva. The plaintiff's defense to such claim is that of a continuous prior nonconforming use expressly permitted under the ordinance. Without going into the facts with respect to this side issue, it is enough to state that there is sufficient dispute with respect thereto to prevent such issue being determined by summary judgment.

*By the Court.*—Judgment reversed, and the cause remanded with directions for further proceedings not inconsistent with this opinion.