MISSIONARIES OF OUR LADY OF LA SALETTE, Appellant, v. MICHALSKI, County Clerk, and others, Respondents.

*January 12—February 6, 1962.*

For the appellant there were briefs and oral argument by *George D. Prentice* of Milwaukee.

For the respondents there was a brief by *Robert P. Russell,* corporation counsel of Milwaukee county, and *John R. Devitt,* assistant corporation counsel, and *Harry J. Hayes* of Milwaukee, for the village of Whitefish Bay, and *Maxwell H. Herriott* and *Thomas A. Clemons* of Milwaukee, special counsel, and oral argument by *Mr. Herriott, Mr. Devitt,* and *Mr. Hayes.*

BROWN, J. Appellant, a religious corporation, is an order of the Catholic Church, operating the premises as a dwelling for the brothers of the order. Six priests and one lay brother live there in a communal fashion as prescribed by canon law of the Catholic Church. The house is commonly called the "mission." It has a chapel in which daily services are conducted for the residents. The priests are under the supervision of a superior who lives at the mission. He is immediately subject to a provincial in St. Louis who is

subject to the direction of the Bishop of Rome. The resident priests engage in various religious and charitable works in the area churches. They are not assigned permanently to any specific church but assist the nearby parish priests as needed. None of the priests' religious work is done at the mission house.

The appellant corporation has the following enumerated purposes in its articles:

(1) To occupy their home as a residence;

(2) To serve Roman Catholics in the state of Wisconsin by assisting parish pastors and promoting missions; and

(3) To promote various educational, charitable, and religious endeavors.

Appellant acquired title to the premises in July, 1953. The statute, sec. 70.11 (1953), then pertaining to its tax situation was:

"70.11 PROPERTY EXEMPTED FROM TAXATION. The property described in this section is exempted from general property taxes: . . .

"(4) *Educational, religious, and benevolent institutions; women's clubs; historical societies; fraternities; libraries.* Property owned and used exclusively by educational institutions offering regular courses six months in the year; or by churches or religious, educational, or benevolent associations; including parsonages, whether of local churches, or districts, and occupied by the pastor permanently; . . ."

By virtue of that statute appellant had considered itself exempt and did not pay the 1954 or the 1955 assessments. In this action its complaint sought to enjoin the collection of those taxes. The trial court dismissed appellant's complaint on the merits.

The Wisconsin constitution, sec. 1, art. VIII, declares taxation shall be uniform; thus for appellant to prevail, an exemption must be found to be directly applicable to this property.

Sec. 70.11 (4), Stats. 1953, exempts property "owned and used exclusively by" religious organizations "including parsonages, . . . and occupied by the pastor permanently." This realty is conceded to be owned by a religious organization and the questions for determination are whether it is "used exclusively by" the religious group and whether the property can be considered a "parsonage" which is "occupied by the pastor permanently."

This court considered the same premises in a 1954 appeal. *Missionaries of La Salette v. Whitefish Bay,* 267 Wis. 609, 66 N. W. (2d) 627. Here the village of Whitefish Bay claimed that the establishment of this mission house violated a zoning ordinance. Only single-family dwellings were permitted in the area where the mission house was located and the court held that the religious order did not violate the ordinance. The court found the priests "merely lived upon the premises" while all work except household duties was carried on elsewhere. "The arrangement appears to be no different than were a group of schoolteachers, nurses, etc., in some collective capacity, to acquire the premises, use the same as a residence for the group, and pursue their vocations away from the place. . . . The evidence is undisputed that their vocational activities, except for ordinary personal and household duties, are directed entirely to situations and places away from the premises. . . . Here, the use is exclusively for ordinary residential purposes, no other." The trial court cited this case, particularly the statement that the mission house is "used as a private residence and for no other purpose."

Appellant contends that the 1954 decision is not applicable here. It admits that the fact situation is identical but points out that the question of tax exemption was not before the court and this court's recognition that the religious works were performed elsewhere by the missionaries has no effect

on the present question. Therefore, appellant concludes that the trial judge erred in relying on the earlier case.

Respondents contend that the 1954 case *is* controlling here. They emphasize the court's 1954 statement that this property was used as a private residence and for no other purpose. Thus, they reason, the court found that the property was not being used exclusively by a religious association and it cannot be held exempt under the statute.

Heretofore, the statutory language which exempts property "owned and used exclusively by" a religious body has been interpreted to require that the primary physical *use* of the property be an exclusively religious one. If such an exclusive use was not required, a house owned by a church and occupied as a home by the pastor of a congregation of that church would clearly qualify for exemption under the statute prior to 1949 which exempted "property owned and used exclusively by . . . churches or religious . . . associations, . . ." The legislature did not regard such language sufficient for the exemption of such dwellings. This is apparent by ch. 643, sec. 27r, Laws of 1949, amending sec. 70.11 (4), which added to "owned and used exclusively by" churches and religious associations the further provision "including parsonages, whether of local churches, or districts, and occupied by the pastor permanently; . . ." The conclusion must be that the *use of* the property must be an exclusive religious use to qualify for exemption under the statute and the exclusive *use by* the church or religious association is insufficient unless further provision appears.

We consider that the 1954 case, *supra,* is applicable here. Although there the coverage of a zoning ordinance was in question rather than taxation, the finding as to the property's use would not be affected and our conclusion (on the same facts) that the mission was used only as a private residence precludes a finding that it was used exclusively for religious purposes.

Even if we disregarded the 1954 case, the applicability of the exemption statute would remain.

The trial judge made the following findings:

(1) The premises were not used exclusively by a religious association during the period in question; and

(2) The premises did not consist of a parsonage occupied by a pastor permanently. Thus, he concluded, there is no exemption of this property under the statute for 1954 and 1955.

Appellant urges the view that the mission house *is* a parsonage and is exempt as such. If the legislature had thought so it would not have amended sec. 70.11 (4), Stats., by chs. 130 and 660, Laws of 1955 (too late to apply to the 1955 tax). The material part of the amendment struck out the parsonage exemption and in its place added to the exemptions of property owned and used exclusively by churches or religious associations the following:

". . . including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; . . ."

This clearly retains as exempt parsonages and adds exemption for dwellings such as appellant's property from the tax after the enactments. The amendment is a recognition by the legislature that the latter was not previously exempt, either as a parsonage or otherwise. Furthermore, as respondents contend, such occupancy by the missionaries does not mean that the mission house was a parsonage. Their position is that a parsonage must be occupied by a clergyman who "has been duly designated by his ecclesiastical superior to head and take charge of a group of communicants of his faith at a specified place of worship, *i.e.*, a church, or in a specified geographical area, *i.e.*, a parish." Here the priests

were not assigned to any particular area or church and had no parish. Thus, respondents argue that since the mission house was not connected with any specific parish or area, it could not be a parsonage.

See *Dupont v. Pelletier* (1921), 120 Me. 114, 119, 113 Atl. 11:

" 'The priest is a position with a spiritual power, without reference to any particular locality; the pastor is a priest who is appointed to a certain parish to take charge of the temporal and spiritual welfare of that parish, subject to the bishop.' It accordingly follows that, although a priest, his functions as a pastor are confined to the particular parish over which he is appointed for the time being to preside, and is a permanent official of the parish."

In 29 Op. Atty. Gen. 252, appears the following:

"In order to be a 'parsonage,' the residence, from the term itself, as well as from the statute (the statute reads, 'occupied by the pastor') must be the residence of a 'parson' or 'pastor.' Funk & Wagnalls New Standard Dictionary defines a parsonage as, 'A clergyman's dwelling, especially a free official residence provided for a parson or pastor.' Its modern general signification, according to *In re Wells' Estate* (1891, Vt.) 21 Atl. 270, is in the sense of its being the residence of the parson.

"A 'parson,' according to Webster's New International Dictionary is 'any clergyman,' while the Funk & Wagnalls New Standard Dictionary definition is, 'The clergyman of a parish or congregation.' "

We conclude that the mission house is not and never was a parsonage. This follows from the wording of the statute itself when it states that the parsonage must be of a local church or district. Here the mission house was not attached or assigned to any church or district; it operated independently. Also, the various definitions given to "pastor" all include the requisite that he be in charge of a church or

district, *e.g.,* Webster's New International Dictionary and 29 Op. Atty. Gen. 252.

The nonexemption of such a mission house owned by a religious order appears to have been an oversight in the 1953 statute which was corrected in 1955, but we must hold that appellant was not exempt until the 1955 amendment was passed.

*By the Court.*—Judgment affirmed.