MIDTOWN CHURCH OF CHRIST, INC., Plaintiff-Respondent, v. CITY OF RACINE, Defendant-Appellant.

*No. 76–080. Argued February 6, 1978.—Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 281.)

For appellant there was a brief and oral argument by *Joseph E. Boyle,* city attorney.

For respondent there was a brief and oral argument by *Robert P. Goodman* of Racine.

ABRAHAMSON, J.  The City of Racine levied property taxes for the years 1971–74 on a residence owned by the Midtown Church of Christ, a Wisconsin religious corporation. The Church refused to pay the taxes and brought an action claiming that the property was exempt under sec. 70.11 (4), Stats., which exempts from general property taxes "property owned and used exclusively . . . by churches or religious . . . associations . . . including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches . . . while such property is not used for profit." The trial court determined that the residence was exempt from property tax under sec. 70.11 (4). We reverse.

In February, 1970, A. J. Colston, the recently hired pastor of the Midtown Church of Christ, moved into the parsonage for which the Church seeks property tax exemption. Pastor Colston died in October of 1970. Pursuant to an oral agreement made with Pastor Colston, and because of concern for Mrs. Colston, who was sixty-five years of age at the time of the pastor's death, was in poor health, and was unable to work, the Church officials permitted the widow to continue to occupy the house without paying rent. The City did not subject the parsonage to property taxes while it was occupied by Pastor Colston. In 1971, however, after the pastor's death, the City returned the house to the tax rolls.

Section 70.11(4), quoted above in pertinent part, exempts from property taxes church-owned property which is not used for profit and which is occupied by any of four types of users: (1) pastors; (2) ordained assistants; (3) members of religious orders and communities; or (4) ordained teachers.

The parties agree that the property in question was owned by the Church, was not used for profit, and was used for housing. The issue is whether Mrs. Colston falls within one of the four groups exempted. Since it is undisputed that Mrs. Colston was not a pastor, an ordained minister, or an ordained teacher, the house falls within the purview of sec. 70.11(4) only if Mrs. Colston was a "member of a religious order and community" within the meaning of the statute.[1]

---

[1] The phrase "members of religious orders and communities" was added to the statute in 1955. Prior to 1955, sec. 70.11(4) exempted "parsonages . . . occupied by the pastor permanently." Ch. 130, Laws of 1955, substituted the following for the "parsonage" language: "property used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers and permanently occupied by them, whether or not contiguous to and a part of other property owned and used by such associations or churches."

Testimony at the trial established that all members of the Midtown Church of Christ are denominated "missionaries." Mrs. Colston considered herself to be a missionary and she would, on occasion, visit a hospital and encourage people to attend church to hear the preacher explain the teachings of the Church. The Church contends that Mrs. Colston is a member of a religious order and community because each member of the Church is engaged in a mission as defined by the Bible[2] and because Mrs. Colston was granted, as part of the employment arrangement with the pastor, the rent-free use of the house.

The Church's interpretation of the phrase "members of religious orders and communities" comports neither with the legislative purpose of sec. 70.11(4), nor with the meaning of the phrase as it is used in the statute.

The statutory property tax exemption granted parsonages by sec. 70.11(4) has been justified on the theory that a parsonage is an integral part of a church program. A parsonage has been deemed to be vital to the smooth

---

In *Missionaries of La Salette v. Michalski*, 15 Wis.2d 593, 113 N.W.2d 427 (1962), which concerned taxes levied under the older statute, this court held that a mission house occupied by seven members of a religious order was not a parsonage, as that word is commonly used. Therefore, the mission house was subject to property tax until, in 1955, the legislature specifically exempted housing for members of religious orders.

[2] *Compare Evangelical Alliance Mission v. Village of Williams Bay*, 54 Wis.2d 187, 194 N.W.2d 646 (1972), which involved an Illinois corporation which performed religious and educational work throughout the world. Missionaries home on furlough and staff members of the Mission used the church-owned residence for short intervals. The court held that use by transient missionaries constituted use for "housing" under sec. 70.11(4), Stats. The court did not consider how the missionaries relate to any of the four types of users the statute exempts. Mrs. Colston differs from the full-time missionaries involved in the *Williams Bay* case: her missionary activity was restricted to occasional invitations to others to attend her church.

running of the activities of the congregation.[3] In Wisconsin, the exemption for the parsonage originally was restricted to the home of the pastor, the person who oversaw all church functions. Over the years the legislature has expanded the statute to include the housing of religious persons who perform other significant official functions for the church. For this court to extend the property tax exemption to a house occupied by a member of a religious group merely because a sect designates all its congregation "missionaries," or designates all its congregation "members of a religious order and community," would be inconsistent with the statutory purpose of exempting from property taxation housing occupied by that limited group of people whose employment is integral to the functioning of the church.

The limited scope of the exemption granted by sec. 70.11(4) can similarly be seen in the words and phrases associated with the phrase "members of religious orders and communities," *i.e.*, "pastors," "their ordained assistants" and "ordained teachers."[4] This list of religious persons whose housing is exempt includes only those persons who have official leadership roles in the activities of the congregation. Neither as a member of the congregation nor as the widow of the deceased pastor does Mrs. Colston occupy a position of leadership in her church similar to the position of the enumerated persons in the statute. We conclude that nothing in the statutory language evinces a legislative intent to include within

---

[3] *See* cases cited in Annot., *Taxation: Exemption of Parsonage or Residence of Minister, Priest, Rabbi, or Other Church Personnel,* 55 A.L.R.3d 356 (1974).

[4] An accepted canon of statutory construction is *noscitur a sociis, i.e.,* that the meaning of a doubtful phrase or word may be ascertained by reference to the meaning of the phrases and words associated with it. *Estate of Nottingham,* 46 Wis.2d 580, 589, 175 N.W.2d 640 (1970) ; 2A Sands, *Sutherland on Statutory Construction,* sec. 47.16 (4th ed. 1973).

the phrase "members of religious orders and communities" members of congregations or pastors' widows.

Further, the phrase "members of religious orders and communities" is to be construed according to "common and approved usage," sec. 990.01, Stats. Webster's Third New International Dictionary lists many definitions of community, including: "a monastic body or unified religious group" and "a group sharing a particular economic and social belief and living communally." That dictionary states that "order" can refer to "a religious body, typically an aggregate of separate communities living under a distinctive rule, discipline, or constitution: a monastic brotherhood or society." Because Mrs. Colston is not part of a religious community living apart from the secular community and she is not part of a unified religious group living communally, she is not a member of a religious order and community within the common usage of that phrase.

The Church permitted Mrs. Colston to occupy the house not because they needed her services as a religious leader or religious adviser but because she was their pastor's widow, elderly, and in poor health. Notwithstanding the Church's commendable motives, this use of church property is not tax exempt under sec. 70.11(4).

*By the Court.*—Judgment reversed.