SISTERS OF SAINT MARY, Plaintiff-Respondent, v. CITY OF MADISON, Defendant-Appellant.

Supreme Court

*No. 76–664. Submitted on briefs May 2, 1979.—*
*Decided May 30, 1979.*
(Also reported in 278 N.W.2d 814.)

For the appellant the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, and *Larry W. O'Brien,* assistant city attorney.

For the respondent the cause was submitted on the brief of *Timothy D. Fenner* and *Axley, Brynelson, Herrick & Gehl* of Madison.

BEILFUSS, C.J.    The complaint alleges the collection of the taxes on the property is unlawful and illegal be-

cause the property in question is exempt from taxation both as property owned by the plaintiff and used exclusively for the purposes of a non-profit hospital under sec. 70.11(4m), Stats. (1975), and as property owned by the plaintiff and used for housing for members of religious orders and communities under sec. 70.11(4), Stats. (1975). The relevant portions of the two statutory sections relied on by the Sisters of St. Mary read as follows:

"70.11 **Property exempted from taxation.** The property described in this section is exempted from general property taxes:

". . .

"(4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively . . . by churches or religious, educational or benevolent associations, . . . also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches. . . .[1]

---

[1] In its entirety this section is as follows: "(4) EDUCATIONAL, RELIGIOUS AND BENEVOLENT INSTITUTIONS; WOMEN'S CLUBS; HISTORICAL SOCIETIES; FRATERNITIES; LIBRARIES. Property owned and used exclusively by educational institutions offering regular courses 6 months in the year; or by churches or religious, educational or benevolent associations, including benevolent nursing homes and retirement homes for the aged, and also including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches; or by women's clubs; or by domestic incorporated historical societies; or by domestic, incorporated, free public library associations; or by fraternal societies operating under the lodge system (except university, college and high school fraternities and sororities), but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit. Property owned by churches or religious associations necessary for location and convenience of buildings, used for educational purposes and not for profit, shall not be subject

"(4m) NONPROFIT HOSPITALS. Property which is used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or deformed, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or groups of doctors. . . ." (1975 Stats.) [2]

The parties stipulated the facts. The relevant facts as they appear in the stipulation may be summarized as follows: The Sisters of St. Mary is a non-stock, non-profit foreign corporation exempt from state and federal income taxation under sec. 501(c)(3) of the Internal Revenue Code of 1954 as amended. The corporation was organized for religious, educational and benevolent purposes and is engaged in religious, educational and benevolent activities. The religious association was formed by

---

to the 10-acre limitation but shall be subject to a 30-acre limitation. Leasing such property to similar organizations for educational or benevolent purposes, where all the income derived therefrom is used for maintenance, shall not render the property taxable."

[2] The legislature amended sec. 70.11(4m), Stats., in 1977, chs. 29, 83 and 418, Laws of 1977. The section now reads as follows:

"(4m) NONPROFIT HOSPITALS. Real property owned and used and personal property used exclusively for the purposes of any hospital of 10 beds or more devoted primarily to the diagnosis, treatment or care of the sick, injured, or disabled, which hospital is owned and operated by a corporation, voluntary association, foundation or trust, no part of the net earnings of which inures to the benefit of any shareholder, member, director or officer, and which hospital is not operated principally for the benefit of or principally as an adjunct of the private practice of a doctor or group of doctors. This exemption does not apply to property used for commercial purposes or as a doctor's office. The exemption for residential property shall be limited to dormitories of 12 or more units which house student nurses enrolled in a state accredited school of nursing affiliated with the hospital."

and consists of members of the Roman Catholic religious order known as the Sisters of Saint Mary, which order has the purpose of rendering physical and spiritual care to the sick, injured or deformed. None of the sister-members of the religious corporation receive compensation for their services.

It was further stipulated that the religious corporation of the Sisters of St. Mary owns and operates St. Marys Hospital Medical Center in Madison, Wisconsin. The hospital, an institution having more than ten beds, is primarily devoted to the diagnosis, treatment and care of the sick, injured or deformed; however, it is also engaged in medical education and research. No part of the net earnings of the corporation or the hospital inures to the benefit of any sister, member, director or officer of the two entities. Neither is the hospital operated for the benefit of or as an adjunct to the private practice of a doctor or group of doctors.

The hospital chaplain heads St. Marys Department of Pastoral Care. He is on call at all times for the two-fold purpose of caring for the spiritual and religious needs of both the patients and the sisters of St. Mary who staff the hospital. To this end he regularly conducts masses and other Roman Catholic religious services routinely performed by priests for members of the Roman Catholic church. The position was filled by appointment by the Roman Catholic Bishop of the Diocese of Madison and can only be occupied by a duly ordained Roman Catholic priest.

Living quarters for the hospital chaplain have always been provided rent-free by the Sisters of St. Mary. Originally the rooms for housing were located within the principal building of St. Marys Hospital Medical Center itself. Because of the need for additional space for patient care, a separate single-family dwelling located in the immediate vicinity of the hospital was purchased by the

religious corporation to be used as a residence for the chaplain. The hospital chaplain has resided in that residence since the purchase and the building is used exclusively for that purpose.

The trial court in deciding the matter recognized the developing modern medical concept that total patient care in hospitals necessarily encompassed the emotional, psychological and spiritual aspects of illness. The trial court further concluded that maintaining a residence for the chaplain in the immediate vicinity of the hospital so that he might be on call to administer to the religious needs of the staff, patients and patients' families was reasonably necessary for the purposes of the hospital rather than merely a convenience for the hospital chaplain. The trial court made the following conclusions of law: That St. Marys Hospital Medical Center was a qualified non-profit hospital within the meaning of sec. 70.11 (4m), Stats.; that the residence owned by the religious corporation and used to house the chaplain was used exclusively for the purpose of the hospital within the meaning of the statute and was therefore exempt from taxation; and that, as a consequence, the real estate taxes levied on the property for the years 1975 and 1976 constituted an illegal tax under sec. 74.73 (1), Stats. The court did not consider nor determine whether the residence, as the plaintiff-respondent alleged, was also exempt from taxation under sec. 70.11 (4).

The issues presented by the parties are as follows:

1. Does the respondent's ownership and use of a single-family residence for housing its hospital chaplain render the premises exempt from taxation pursuant to sec. 70.11 (4m), Stats.?

2. Does the respondent's ownership and use of the described premises render the premises exempt from taxation pursuant to sec. 70.11 (4), Stats.?

The factual stipulations agreed upon by the parties were adopted as the evidentiary findings of fact by the trial court. It is conceded that the Sisters of St. Mary is a religious, educational and benevolent corporation which, if otherwise eligible, is entitled to the tax exemption provided under sec. 70.11(4), Stats.[3] It is also conceded that St. Marys Hospital Medical Center is a non-profit hospital whch satisfies the general tax exemption eligibility qualifications prescribed for non-profit hospitals under sec. 70.11(4m). The correctness of these findings is not before the court in this appeal. The narrow first issue is whether the house owned by the Sisters of St. Mary and used exclusively as a residence by the chaplain of St. Marys Hospital Medical Center is property used exclusively for the purposes of the hospital within the meaning of sec. 70.11(4).

The burden of showing that property is exempt from taxation is on the one seeking the exemption, *i.e.*, the Sisters of St. Mary in this case.[4] To be entitled to tax exemption the taxpayer must bring himself within the exact terms of the exemption statute. While the statute must be given a strict construction in favor of taxation, the modern rule is that the statute must be given a "strict but reasonable" construction. *Columbia Hospital Asso. v. Milwaukee,* 35 Wis.2d 660, 668–69, 151 N.W.2d 750 (1967).

---

[3] Exemption of real property owned and used exclusively by an educational or benevolent association from taxes extends to associations incorporated under laws of states other than Wisconsin. *Hahn v. Walworth County,* 14 Wis.2d 147, 153–54, 109 N.W.2d 653 (1961).

[4] *First Nat. Leasing Corp. v. Madison,* 81 Wis.2d 205, 260 N.W.2d 251 (1977); *Madison Aerie No. 623 F. O. E. v. Madison,* 275 Wis. 472, 476, 82 N.W.2d 207 (1957); *Bethel Convalescent Home v. Richfield,* 15 Wis.2d 1, 4, 111 N.W.2d 913 (1961).

Sec. 70.11(4m), Stats., was created in 1957, ch. 149, Laws of 1957, specifically to apply to hospitals, notwithstanding the existence of the exemption in sec. 70.11(4) applicable to charitable and benevolent institutions generally. Any construction of the statute must take into account its clear legislative purpose, namely, to provide a benefit to nonprofit hospitals engaged in the care of the sick.[5] To be entitled to a tax exemption under this section, Sisters of St. Mary has the burden of showing that the chaplain's residence is property used exclusively for the purposes of St. Marys Hospital Center. The statutory terms at issue here were thoroughly analyzed by this court in *Columbia Hospital Asso. v. Milwaukee, supra*. With reference to the phrase "for the purposes of any hospital" the court made the following declarations:

"It is argued by the city that the 'purposes of a hospital' are to be determined by the concept of the primary function of diagnosis, treatment and care of the sick and the decision of the hospital management of what is necessary for its purposes is not conclusive in determining what property is to be exempt. We think the hospital management may determine the purposes of the hospital. What means are necessary to attain the purposes is a question open to determination . . . [I]f a secondary purpose of a hospital is generally recognized as a desirable purpose of a modern hospital, it is legitimate for the purposes of tax exemption." *Id.* at 669–70.

The plaintiff contends that an important secondary purpose of St. Marys Hospital Medical Center is to care for the spiritual needs of its patients. The trial court, citing statements from the Manual of the American Hospital Association, acknowledged that dealing with the psychological, emotional, and spiritual aspects of illness

---

[5] *First Nat. Leasing Corp. v. Madison, supra*, 81 Wis.2d at 213.

is part of a significant trend toward "total patient care" in modern hospitals.[6] The trial court correctly concluded that the hospital management in the present case could legitimately determine, as it did, that treatment of the non-physical aspects of illness was an important secondary purpose of St. Marys Hospital Medical Center. Whether owning and maintaining a single-family dwelling as a residence for the hospital chaplain is necessary to fulfill this purpose however is a question for judicial determination.

In *Columbia Hospital Asso. v. Milwaukee, supra,* 35 Wis.2d at 668, we stated:

"In considering this exemption problem we cannot restrict our consideration to the primary purpose of a hospital or to a typical small hospital offering limited facilities. The language of the section does not so limit the meaning of the word 'hospital.' In fact, sec. 70.11(4m), Stats., recognizes the primary purpose of an exempted hospital and by that token recognizes such a hospital may have other legitimate purposes. The section has carefully expressed the exemption in terms of a hospital whose primary purpose is diagnosis, treatment and care and this contemplates that a hospital may have other functions and objects, whether they be directly or indirectly associated with the care of the sick. The language of the section refers to property used exclusively for the purposes of the hospital. This means any and all pur-

[6] The "Manual on Hospital Chaplaincy" of the American Hospital Association contains the following declaration: "A hospital that is dedicated to total patient care, or care of the whole man, is dedicated to healing. The spiritual and religious dimensions of patient care are significant to the patient's well-being. Total patient care involves more than excellence in medical or surgical achievement, because man is more than a physiologic structure. Total patient care is concerned with the social, emotional, spiritual, and economical as well as the physical and chemical restoration of human beings. Medical service alone cannot accomplish this. 'Because caring for the religious needs of patients is an essential part of total patient care, the hospital chaplain should function as a member of the healing team.' "

poses, not just for the primary purpose of care, diagnosis or treatment."

Using the strict but reasonable rule of construction to interpret the exemption in sec. 70.11(4m), Stats., for property "used exclusively for the purposes of any hospital," this court in *Columbia Hospital Asso. v. Milwaukee, supra,* at 671, adopted the test of " 'reasonable necessity to the efficient functioning of the hospital as an organization.' " Elaborating on this rule, the court noted that—"Under this doctrine, even though there is some incidental benefit to the occupants of residential properties, such benefit does not require that the property be nonexempt when the providing of such housing is for the greater benefit of the hospital." *Id.* at 671. The hospital-owned residences used by the director of nursing, electronic technician and director of building services in *Columbia Hospital Association* qualified for exemption, as these personnel were so essential to the efficient operation of the hospital that it was necessary for them to be close to the hospital for emergencies and readily available or "on call."

Based on the test for tax exemption under sec. 70.11 (4m), Stats., adopted by this court in *Columbia Hospital v. Milwaukee, supra,* it is clear that the tax exempt status of the single-family dwelling owned by the Sisters of St. Mary and used by that corporation as a residence for the chaplain of St. Marys Hospital Medical Center depends on whether providing a residence for the chaplain is "reasonably necessary to the efficient functioning of the hospital as an organization." The court below determined that it was. We agree.

The trial court decision recognized and gave significant weight to what was termed the modern medical concept of "total patient care." It is appropriate for this court

to acknowledge the general growing awareness of and concern for the non-physiologic aspects of illness. The American Hospital Association suggests that hospital chaplains, long present in some hospitals, should function as members of hospital healing teams. Psychologists and psychiatrists are commonly called in to treat the emotional side effects of illness, helping a patient and his family adjust to the realities of his condition. The social, emotional and spiritual dimensions of patient care are indeed important to the patient's well-being. Caring for these non-physical needs of patients is a legitimate purpose of a modern hospital.

To fulfill this function the Sisters of St. Mary have created a Department of Pastoral Care directed by the hospital chaplain. The chaplain helps to provide for the "total" needs of the patient entrusted to his care. He administers to the spiritual needs of patients and staff, obtaining the services of clergy of various faiths on a full or part-time basis as patient and staff needs require. The chaplain of St. Marys is a full-time employee who supervises four other members of the Department of Pastoral Care. He rotates "on call" responsibilities and is called to the hospital during off-duty hours to perform emergency religious services for patients.

Considering it advantageous to have the chaplain readily available, the religious corporation of the Sisters of St. Mary has furnished the hospital chaplain with a rent-free residence in the immediate vicinity of St. Marys Hospital Medical Center. The trial court considered occupancy of the residence by the chaplain to be for the benefit of the hospital in fulfilling its obligation to its patients and concluded that the property was exempt from taxation as property used exclusively for the purposes of the hospital. We agree with this conclusion as being consistent with this court's construction of sec.

70.11(4m), Stats., as it appears in *Columbia Hospital Asso. v. Milwaukee, supra.*[7]

The Sisters of St. Mary also contends the property in question is entitled to a tax exemption under sec. 70.11 (4), Stats., which exempts from general property taxes "property owned and used exclusively . . . by churches or religious . . . associations . . . including property owned and used for housing for pastors and their ordained assistants, members of religious orders and communities, and ordained teachers, whether or not contiguous to and a part of other property owned and used by such associations or churches . . . while such property is not used for profit." The trial court did not determine nor consider the eligibility of the chaplain's residence for exemption under this section. The scope of the exemption provided in this section was recently reviewed by this court in *Midtown Church of Christ v. City of Racine,* 83 Wis.2d 72, 74–76, 264 N.W.2d 281 (1978). Our analysis, in part, is as follows:

"The statutory property tax exemption granted parsonages by sec. 70.11(4) has been justified on the theory that a parsonage is an integral part of a church program. A parsonage has been deemed to be vital to the smooth running of the activities of the congregation. In Wisconsin, the exemption for the parsonage originally was restricted to the home of the pastor, the person who oversaw all church functions. Over the years the legislature has expanded the statute to include the housing of religious persons who perform other significant official functions for the church . . . [The language evinces a] statutory purpose of exempting from property taxation housing occupied by that limited group of people whose employment is integral to the functioning of the church.

"The limited scope of the exemption granted by sec. 70.11(4) can similarly be seen in the words and phrases associated with the phrase 'members of religious orders

---

[7] We express no opinion as to the effect of the amendment of the statute by the 1977 legislature.

and communities,' *i.e.*, 'pastors,' 'their ordained assistants' and 'ordained teachers.' This list of religious persons whose housing is exempt includes only those persons who have official leadership roles in the activities of the congregation. . . .

"Further, the phrase 'members of religious orders and communities' is to be construed according to 'common and approved usage,' sec. 990.01, Stats. Webster's Third New International Dictionary lists many definitions of community, including: 'a monastic body or unified religious group' and 'a group sharing a particular economic and social belief and living communally.' That dictionary states that 'order' can refer to 'a religious body, typically an aggregate of separate communities living under a distinctive rule, discipline, or constitution: a monastic brotherhood or society.' "[8]

In *Missionaries of La Salette v. Michalski,* 15 Wis.2d 593, 113 N.W.2d 427 (1962), which concerned taxes levied under the prior version of the statute, the court noted that a mission house occupied by seven members of a religious order, while not exempt under the older statute, would qualify for an exemption under the 1955 statutory amendment. The dwelling was owned by a religious order of the Catholic Church and used by brothers of the order who were engaged in various religious and charitable works, although not assigned permanently to any specific church. The residence was determined to be housing for members of religious orders and communities.

Sec. 70.11(4), Stats., was also applied in *Evangelical Alliance Mission v. Williams Bay,* 54 Wis.2d 187, 194 N.W.2d 646 (1972), a case involving an Illinois corporation which engaged in religious and educational work throughout the world. The facts revealed that fulltime

---

[8] On the basis of this construction the court concluded that the church-owned residence occupied rent-free by the widow of the church pastor did not qualify for a tax exemption under the statute.

missionaries home on furlough and staff members of the Mission used the church-owned residence for short intervals. The court held that use by the transient missionaries constituted use for hosping under sec. 70.11 (4).

The parties in the present case agree that the residence in question is owned by a religious association, is not used for profit and is used for housing. The sole issue is whether the position of hospital chaplain is encompassed within one of the four groups specifically mentioned in the statute, *i.e.*, (1) pastors; (2) ordained assistants; (3) members of religious orders and communities; or (4) ordained teachers.

The property in question is owned by the Roman Catholic religious order which owns and operates St. Marys Hospital Medical Center. It is occupied as a residence by the hospital chaplain, a duly ordained Roman Catholic priest appointed to serve in that capacity by the Roman Catholic Bishop of the Diocese of Madison. The chaplain has the general responsibility of ministering to the religious needs of the sisters who staff the hospital and the patients at St. Marys in much the same way as a pastor of a specific congregation ministers to the needs of his parishioners. He visits patients individually in their rooms and also holds religious services in the hospital chapel. In addition, through the services he performs, he assists the Sisters of St. Mary in fulfilling its mission of rendering physical and spiritual care to the sick, injured or deformed.

The City of Madison maintains that the chaplain is not a pastor of a church as that term is regularly used. However, there is no requirement in sec. 70.11 (4), Stats., that the pastor for whom a religious association provides housing be the pastor of a permanent congregation attached to a specific local church. Indeed, in the 1955 amendment to sec. 70.11 (4), the legislature abandoned

the word "parsonage" which has just such a restrictive connotation for the more general word "pastor" which is defined simply as a "spiritual overseer."[9] The chaplain of St. Marys performs significant official religious functions for the sisters and patients at St. Marys, administering to their religious needs and providing spiritual guidance when requested. Under a reasonable but strict construction of the statute we believe that the single-family dwelling is property owned by a religious association and used as housing for a pastor. The residence therefore qualified for a tax exemption in 1975 and 1976 under sec. 70.11(4), Stats.

We therefore conclude that under sec. 70.11(4m), Stats., the hospital exemption statute as it existed in 1975 and 1976, authorized the exemption from real estate taxation the property in question and that the exemption is also authorized under sec. 70.11(4).

*By the Court.*—Judgment affirmed.

HEFFERNAN, J. (concurring). I concur in the result and join in that part of the opinion which holds that the property is property exempt under sec. 70.11(4m), Stats., as a hospital. Because the trial judge did not determine the exemption under sec. 70.11(4) as property owned by a religious institution, it is unnecessary that we consider that question. The holding of nontaxability under sec. 70.11(4) is not essential to the result of the case. I therefore do not join in the portion of the majority opinion that considers the applicability of sec. 70.11(4).

Justice Abrahamson joins in this concurrence.

---

[9] Webster's Third New International Dictionary.